747 F.2d 1348
 Leo L. MARTELON, Plaintiff-Appellant,
v.
Herbert R. TEMPLE, Jr., Director of the National Guard
Bureau; John L. France, Adjutant General of the Colorado
Department of Military Affairs; William K. White, Paul A.
Parsons, Stephen T. Erickson, and James T. Miller,
Defendants- Appellees.
National Federation of Federal Employees, Amicus Curiae.
 No. 83-2141.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 8, 1984.
 
 Barry D. Roseman, Denver, Colo., for plaintiff-appellant.
 Nancy E. Rice, Asst. U.S. Atty., Denver, Colo., for defendant-appellee Herbert R. Temple, Jr.
 William F. Eggert of Hall & Evans, Denver, Colo., for defendants-appellees, France, White, Parsons, Erickson and Miller.
 Catherine Waelder, Gen. Counsel and Clinton D. Wolcott, Staff Atty., for Nat. Federation of Federal Employees, Washington, D.C., submitted a brief for amicus curiae.
 Before LOGAN, BREITENSTEIN and McWILLIAMS, Circuit Judges.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 This is an appeal from the district court's summary judgment for the defendant-appellees, 568 F.Supp. 672. Plaintiff-appellant claims that he was involuntarily reassigned within, and dismissed from, the Colorado Army National Guard in violation of 42 U.S.C. Sec. 1983 and 32 U.S.C. Sec. 709(e). Jurisdiction lies under 28 U.S.C. Sec. 1331 and Sec. 1343(a)(3). We affirm.
 
 
 2
 The defendants are all officers of the Colorado Army National Guard, COARNG. In this court Major General Herbert R. Temple, Jr. was substituted for Emmet H. Walker, Jr. as Director of COARNG.
 
 
 3
 Martelon, plaintiff-appellant, sought full-time employment in the COARNG as an administrative supply technician. He was informed in writing that his employment was "contingent upon membership in the Colorado National Guard." R. 337. He enlisted in the Guard on November 1, 1974, was employed as an administrative supply technician on November 3, 1974, and assigned to the 220th Military Police Company. His duties required that he supervise military material for his unit. On June 21, 1983, he was involuntarily reassigned to the 193rd Police Battalion. No comparable civilian activity was available in the 193rd Police Battalion. On August 1, 1983, his civilian job was terminated because his new military assignment was incompatible with his continued civilian employment as an administrative supply technician.
 
 
 4
 Plaintiff then filed this suit seeking relief from his termination as a technician in the Guard. He alleged three grounds for relief. First, appellees breached his contract by involuntarily transferring him from one military unit to another. He does not pursue this ground on this appeal. See appellant's brief, p. 4, n. 4. Second, appellees violated his constitutional rights in not affording him a hearing before his termination as a technician of 42 U.S.C. Sec. 1983. Third, appellees violated 32 U.S.C. Sec. 709(e) by terminating his employment for a reason not specified in the statute. The court granted summary judgment for the appellees. There is no issue of material fact. Our review is limited to whether the court correctly applied the substantive law. Western Cas. & Sur. v. National Union Fire Ins., 10th Cir., 677 F.2d 789, 791, n. 1.
 
 
 5
 Plaintiff does not contest that appellees had the authority to transfer him to a different military unit. The trial court noted, R. 454, that,
 
 
 6
 "... plaintiff has not cited, and I have not found, any section of the enlistment contract either guaranteeing his assignment to a specific military unit or limiting the Guard's ability to reassign him."
 
 
 7
 The enlistment contract signed by plaintiff specifically says, R. 68:
 
 
 8
 "I have had this contract fully explained to me, I understand it, and certify that no promise of any kind has been made to me concerning assignment to duty...." [Emphasis supplied.]
 
 
 9
 The United States Constitution in Art. 1, Sec. 8, cl. 12-16, grants control of the Military to the Congress and not to the courts. As said in Chappel v. Wallace, 462 U.S. 296, 103 S.Ct. 2362, 2366, 76 L.Ed.2d 586:
 
 
 10
 "It is clear that the Constitution contemplated that the Legislative Branch has plenary control over rights, duties, and responsibilities in the framework of the military establishment, including regulations, procedures and remedies related to military discipline: ...."
 
 
 11
 In Chappell the Court held that "military personnel may not maintain a suit to recover damages from a superior officer for alleged constitutional violations." Id. 103 S.Ct. at 2368. In Chappell, five enlisted men of the United States Navy brought an action against their military superiors pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619, claiming that because of their minority race defendants failed to assign them desirable duties, gave them low performance valuations, threatened them, and imposed penalties of unusual severity. Bivens held that federal officers may be sued for damages arising out of civil rights violations.
 
 
 12
 In refusing to allow a Bivens remedy for military personnel against their superior officers, the Court said, Chappell, supra, 103 S.Ct. at 2365:
 
 
 13
 "Civilian courts must, at the very least, hesitate long before entertaining a suit which asks the court to tamper with the established relationship between enlisted military personnel and their superior officers; that relationship is at the heart of the necessarily unique structure of the military establishment."
 
 
 14
 In Gilligan v. Morgan, 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407, the Court refused to entertain a suit by university students under Sec. 1983 asking that the courts examine the pattern of training, weaponry and orders of the Ohio National Guard, saying, Id. at 10, 93 S.Ct. at 2446:
 
 
 15
 "It would be difficult to think of a clearer example of the type of governmental action that was intended by the Constitution to be left to the political branches directly responsible--as the Judicial Branch is not--to the electoral process. Moreover, it is difficult to conceive of an area of governmental activity in which the courts have less competence."
 
 
 16
 Plaintiff's reliance on Johnson v. Orr, No. 82-2578 D.C.N.J. is misplaced. In that case, technicians claimed that they were terminated as a result of their union activities. In declining to follow Chappell, the New Jersey district court found that the technicians' claims were incident to their civilian, not military, employment. In the case at bar, termination following his involuntary military transfer is clearly related to military employment. The record amply demonstrates the dissatisfaction of plaintiff's superiors with plaintiff's military performance. R. 78-145. The record also shows that the dissatisfaction was the cause of plaintiff's transfer.
 
 
 17
 Chappell involved a Bivens claim, while here Sec. 1983 is the basis for relief. The difference is due to the identity of the defendants. In Bivens they were federal officers. Here they are state officers and federal relief must be based on Sec. 1983. In Chappell the Court failed to address the Sec. 1985 claim brought by the enlisted men against their superiors. The Court stated that its decision in Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152, guided its analysis in Chappell. Supra, 103 S.Ct. at 2365. In Feres the Court held that the Federal Tort Claims Act did not extend to injuries suffered by military personnel in service. The Court pointed out that no such liability existed before the Federal Tort Claims Act and that Congress never intended to create such liability.
 
 
 18
 Before the passage of Sec. 1983, there was no liability on the part of military superiors for transgressions against the rights of other military personnel. By the passage of Sec. 1983, Congress never intended to create such rights. See the Court's review of the legislative history of Sec. 1983 found in Allen v. McCurry, 449 U.S. 90, 98-99, 101 S.Ct. 411, 416-17, 66 L.Ed.2d 308. The plaintiff's Sec. 1983 claim has no merit.
 
 
 19
 Plaintiff argues that defendants terminated him for a reason not specified in the statute. Section 709(e)(1), 32 U.S.C., provides:
 
 
 20
 "Notwithstanding any other provision of law and under regulations prescribed by the Secretary concerned--(1) a technician who is employed in a position in which National Guard membership is required as a condition of employment and who is separated from the National Guard or ceases to hold the military grade specified for his position by the Secretary concerned shall be promptly separated from his technician employment by the adjutant general of the jurisdiction concerned."
 
 
 21
 The district court found, R. 455, that "a civilian technician ceases to hold the requisite 'military grade' when he or she is reassigned to a military unit from which the civilian technician duties cannot be performed." Plaintiff says that because grade is defined in 32 U.S.C. Sec. 101(10) to mean "a step or degree, in a graduated scale of office or military rank, that is established and designated as a grade by law or regulation," the district court is wrong. The defendants say that the statute anticipates that it shall be expanded by the promulgation of regulations. Section 709(a) provides that "[u]nder regulations prescribed by the Secretary of the Army or the Secretary of the Air Force ... persons may be employed as technicians in ... the National Guard." [Emphasis supplied.] Section 709(e) begins "[n]ot withstanding any other provision of law and under regulations prescribed by the Secretary concerned...." [Emphasis supplied.]
 
 
 22
 Plaintiff was terminated under Technician Personnel Regulation 302.7-9 which reads, R. 262:
 
 
 23
 "A National Guard technician must be assigned to an appropriate military unit (to include military grade and speciality) in the State where his technician job is located (see 32 U.S.C. 709(b)). The concept of the National Guard technician program is that technicians will be militarily assigned to the same unit in which his technician job is located. In other words, a technician will perform his technician duties, his military training duties, and be mobilized to active duty in the same unit."
 
 
 24
 Technician Personnel Regulation 752.2-3, brief of Amicus Curiae, Add. 55, mandates removal of technician employment when a technician "fails to maintain the military grade/rank, branch of service, or compatible military assignment for the position occupied."
 
 
 25
 The question is whether the regulations are consistent with Sec. 709(e). The rule-making authority granted to an administrative agency is not power to make law. Rather it is "the power to adopt regulations to carry into effect the will of Congress as expressed by the statute." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 213-214, 96 S.Ct. 1375, 1391, 47 L.Ed.2d 668. Resort is to the legislative history of the National Guard Technicians Act of 1968, of which Sec. 709(e) is a part. See United States v. Earth Sciences, Inc., 10th Cir., 599 F.2d 368, 372. The legislative history of the Act shows that Congress considered that the military mission of the technicians was paramount and that the technician's duties were inseparable from his or her military obligations. See American Federation of Government Employees v. Federal Labor Relations Authority, D.C.Cir., 730 F.2d 1534, 1542-1547.
 
 
 26
 The Senate Report accompanying the bill, S.Rep. No. 1446, 90th Cong. 2d Sess., R. 236, says:
 
 
 27
 "The concept of the technician program is that the technicians will serve concurrently in three different ways: (a) Perform full-time civilian work in their units; (b) perform military training and duty in their units; and (c) be available to enter active Federal service at any time their units are called."
 
 At R. 254, the Report says:
 
 28
 "The concept of the full-time civilian technician program is that his civilian work will be performed in the same unit in which he holds a mobilization assignment. In other words, the technician would perform his civilian work, his training duty, and be mobilized to active duty in the same unit.... It is the view of the Committee, therefore, that technicians who are required to be military members of the National Guard should occupy a military position which is compatible with their civilian technician position."
 
 
 29
 See also the remarks of Congressman Pickle, 113 Cong.Rec. 3838 and of Senator McIntyre, 114 Cong.Rec. 23,254-23,255.
 
 
 30
 Plaintiff also argues that the agency has impermissibly broadened the removal provisions of Sec. 709(e)(1) because the term "grade" as used therein does not refer to the military unit in which the technician is serving. The Act need not contain this level of detail. In American Federation of Government Employees v. Federal Labor Relations Authority, D.C.Cir., 730 F.2d 1534, the court considered the argument that the National Guard was required to bargain over a union proposal to eliminate consideration of technician's military performance from reduction in force actions because the statute did not mention " 'evaluations' or their use" in Sec. 709(e). The court said, Id. 1544:
 
 
 31
 "This argument is bootless. The Act need not descend to such detail. The evaluation and rating of personnel are implicit in every military organization, their use is fundamental and need not be explicated."
 
 
 32
 The Senate Report and the remarks of members of Congress show that Congress intended that technicians be compatible in their military and civilian unit assignments. Given such legislative history, it is inconceivable that regulations mandating compatibility should be interpreted as inconsistent with Sec. 709(e). The military has great and wide discretion in the formation, application, and interpretation of military regulations. Noyd v. McNamara, 10th Cir., 378 F.2d 538, 540. We agree with the district court's holding that, R. 455, "a civilian technician ceases to hold the requisite 'military grade' when he or she is reassigned to a military unit from which the civilian duties cannot be performed."
 
 
 33
 Affirmed.