**William L. SPENCE, Plaintiff,**

v.

**Major General Harold HOLESINGER, John R. Phipps, William Davis, William Troy, and Ronald Ballow, Defendants.**

No. 87–1020.

United States District Court, C.D. Illinois, Peoria Division.

July 29, 1988.

David W. Stuckel, Harvey & Stuckel, Peoria, Ill., Samuel L. Spear, Spear Wilderman Sigmond Borish, Endy & Silverstein, Philadelphia, Pa., for plaintiff.

Bradley W. Murphy, Asst. U.S. Atty., Peoria, Ill., Wayne S. Carlson, Major, ILANG, Staff Judge Advocate, Military and Naval Dept., Springfield, Ill., for defendants.

## ORDER

MIHM, District Judge.

This case involves sensitive questions as to the authority of federal courts to adjudicate personnel disputes within the National Guard. In particular, this case tests the parameters of that authority where the denial of re-enlistment of a Guardman is alleged to be violative of his constitutional rights. The case is presently before the Court on the Motion of Defendants to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In the alternative, Defendants request this Court to grant them summary judgment under Rule 56(b) of the Federal Rules.

## FACTS

Plaintiff, a former Master Sergeant and federal technician in the Illinois Air National Guard, brings this action against his former military supervisors for alleged violations of his constitutional rights pursuant to the First, Fifth, Ninth, and Fourteenth Amendments of the United States Constitution, for unlawful discrimination pursuant to Title VII of the Civil Service Reform Act, for violations of the Civil Rights Act, 42 U.S.C. § 1983, and for various state law claims. While Plaintiff was a Master Sergeant in the Illinois Air National Guard, he simultaneously held a civilian position as a production controller of aircraft. A federal technician in this civilian position must be a member of the Air National Guard and hold the military grade specified for that position. *See*, 32 U.S.C. § 709(b).

Plaintiff's unit commander, Lt. Col. Troy, denied Plaintiff's re-enlistment in the Air National Guard. In accordance with Air National Guard Regulation 39–09, Supplement 1, that decision was reviewed by the Group Commander and the Commander, Illinois Air National Guard, and both concurred with Lt. Col. Troy's decision. At Plaintiff's request, the Adjutant General of the State of Illinois also reviewed the facts and concurred in the decision to deny re-enlistment. As a result, Plaintiff was separated from the Illinois Air National Guard on May 8, 1982. The current Adjutant General, Major General Harold G. Holesinger, also reviewed this decision, and concurred in the denial of Plaintiff's re-enlistment.

At the time that he was denied re-enlistment, Plaintiff had more than 29 years of military service. He received an honorable discharge, and is eligible to receive military retirement benefits upon obtaining the age of 60. Plaintiff was separated from his technician position on June 5, 1982, pursuant to the provisions of 32 U.S.C. § 709(e)(1); he was eligible for and has been receiving a discontinued service retirement annuity under the Civil Service Retirement System since June 6, 1982.

All Defendants in this litigation are present or former officers of the Illinois National Guard. Defendant Holesinger is the current Adjutant General of the State of Illinois and is being sued in his official capacity only. All other Defendants are sued in their official and individual capacities. With the exception of Defendant Holesinger, all Defendants were supervisors of the Plaintiff who had the authority to effectively recommend and/or approve the retention or separation of Plaintiff in the Illinois Air National Guard.

Plaintiff claims that Defendants denied his application for re-enlistment following the expiration of his enlistment term in order to retaliate against him for his exercise of rights protected by Title VII of the Civil Service Reform Act, 5 U.S.C. § 7101 et seq. Plaintiff, a long time union official, engaged in what Plaintiff calls "some questionable conduct" during 1981, the result of which, Plaintiff claims, Defendants Ballow and Troy recommended that he not be retained following the end of his current enlistment period, in 1982. Plaintiff had a right to appeal this recommendation to a Selective Retention Board, which overruled the recommendation in July 1981, and ruled that Plaintiff be permitted to re-enlist.

In September of 1981, Defendant Ballow advised Plaintiff that the Adjutant General had approved Plaintiff's retention in the Air National Guard and that he had been determined acceptable for reenlistment. In October 1981, Plaintiff received an "outstanding" rating on his military performance report. Plaintiff claims that, between the time of the Selective Retention Board's decision in July 1981, and his separation

from the Guard in May of 1982, no further unfavorable examples of his presumed unfitness for duty occurred. Nevertheless, he was denied re-enlistment in May of 1982, as a result of which he lost his employment as a civilian technician pursuant to 32 U.S.C. § 709(e)(1).

Plaintiff had previously filed an unfair labor practice charge with the Federal Labor Relations Authority, challenging the efforts of Defendants to discipline or terminate him. He claims that he was disciplined for filing this charge, and, as a result, he filed a new charge. The FLRA issued a complaint following its investigation of this latter charge. In the resulting unfair labor practice case, the Administrative Law Judge for the Federal Labor Relations Authority concluded that the sole reason for denying Plaintiff his re-enlistment was the Defendants' determination to "rid themselves" of Plaintiff due to his filing unfair labor practice charges with the FLRA.

On appeal, the Federal Labor Relations Authority reversed the ALJ's decision on jurisdictional grounds. *Dept. of Defense, Ill. Air Nat'l Guard 182d Tactical Air Support Group, Peoria, Ill. and Illinois Air Chapter 34, Ass'n of Civil Technicians, Inc.*, 19 FLRA No. 11 (1985). While FLRA affirmed the ALJ's rulings to the extent consistent with FLRA's disposition, FLRA concluded that it lacked jurisdiction over the matter. The Authority reasoned that, under 32 U.S.C. § 709(e)(5), appeal from terminations of civil technicians, in either their civilian or military capacities, may terminate only with the state adjutant general. The United States Court of Appeals for the District of Columbia Circuit denied the Union's subsequent petition for review on essentially the same ground. *Illinois Air Chapter 34 Ass'n of Civilian Technicians, Inc. v. FLRA*, 802 F.2d 1483 (D.C.Cir.1986) (unpublished opinion).

### DEFENDANTS' CLAIM OF INTRA-MILITARY IMMUNITY

In their Motion, Defendants claim that the doctrine of intra-military immunity

bars the Plaintiff's claims for monetary damages against his military supervisors and co-workers. Defendants state that the military authority to supervise and administer National Guard technicians is vested in the Adjutant General of each state. 32 U.S.C. § 709(c). Defendants note that the United States Supreme Court has forbidden constitutional tort lawsuits among members of the military due to the existence of "special factors counselling hesitation." *See, Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983); *United States v. Shearer*, 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985) (no review of questions involving the management and administration of the armed forces). Defendants further note that, in *Ogden v. United States*, 758 F.2d 1168 (7th Cir.1985), the Seventh Circuit ruled that *Chappell* precluded monetary relief for military plaintiffs against military defendants.

In *Ogden*, the Court of Appeals did not address the issue of whether a civil rights action could be maintained in the face of *Chappell*, but courts in other circuits have rejected § 1983 claims entirely—for damages and for injunctive relief—in personnel matters in the military context. *See, Crawford v. Texas Army National Guard*, 794 F.2d 1034, 1036–37 (5th Cir.1986); *Martelon v. Temple*, 747 F.2d 1348, 1350–51 (10th Cir.1984), *cert. denied*, 471 U.S. 1135, 105 S.Ct. 2675, 86 L.Ed.2d 694 (1985). Defendants note that the Third Circuit has held that damage claims are barred, but that injunctive relief remains available in intra-military lawsuits. *Jorden v. National Guard Bureau*, 799 F.2d 99, 106 (3rd Cir.1986), *cert. denied*, — U.S. —, 108 S.Ct. 66, 98 L.Ed.2d 30 (1987). In *Jorden*, the Third Circuit stated that it believed that the Seventh Circuit would join in its view of judicial intervention for injunctive relief only in light of *Ogden*. *Jorden*, 799 F.2d at 109. Consequently, Defendants contend that all of the individual Defendants who have been sued in their individual capacities should be dismissed from this lawsuit.

In response, Plaintiff states that the Seventh Circuit has yet to rule on the issue of whether or not a civilian technician in Spence's position is barred from seeking relief in the form of damages. According to Plaintiff, *Ogden* furnishes authority for the maintenance of a § 1983 action against military superiors, at least for injunctive relief. Plaintiff observes, however, that *Ogden* did not involve National Guard civilian technicians, so that the differences between civilian technicians and the military servicemen involved in *Ogden* leave open Plaintiff's claim that damages may also be recovered under circumstances such as those present in this case.

Plaintiff claims support for his position in the dissenting opinion of Chief Judge Gibbons in *Jorden*, 799 F.2d at 111. *Jorden* involved a "whistle blowing" civilian technician who claimed that he was dismissed from the National Guard for his First Amendment activities. In his resulting civil rights discrimination action, he sought injunctive relief and damages. In his dissent, Chief Justice Gibbons agreed with the *Jorden* majority that injunctive relief should be available, but disagreed with dismissal of the damages aspect of that case. Noting that *Chappell* involved claims brought by enlisted Navy personnel against their federal naval officers, Chief Judge Gibbons argued that the liability of state National Guard officials is not necessarily the same for immunity purposes. He concluded that the *Jorden* majority had merely "side stepped" this issue, thus leading to a result which "automatically immunize[d] the state officials." 799 F.2d at 114. Chief Judge Gibbons' criticism of the majority's analysis was as follows:

> Turning to the substance of the matter, the federal military and state National Guards differ in obvious and significant ways. As the Court explained in *Chappell*, the principal rationale for barring intra-military damage actions by federal personnel is the concern for "disruption of the peculiar and special relationship of the soldier to his superiors that might result if the soldier were allowed to hale his superiors into court." 462 U.S. at 304, 103 S.Ct. at 2367 (citations and internal punctuation omitted). Whatever one might think of the validity of this reasoning as it pertains to the federal military,

it simply is not relevant to state National Guards. While those organizations have their military aspects, they are principally civilian in character, and the inter-relationships of their members are principally civilian in character. The specifics of this case highlight these facts. Jorden was hired by PaANG as a civilian technician, and he enlisted only because membership in the Guard was a prerequisite to civilian employment. As a member he was required to serve in a military capacity for only 15 days out of the year. During the rest of the time he served as a civilian employee and was not subject to military command. Thus it is quite clear that the attenuated concern for military discipline in this context bears no resemblance to the concern for such in the federal context. Consequently, the rationale for shielding federal military officers from damage suits does not support shielding state National Guard officials from similar suits.

*Id.* at 114–15 (footnote omitted).

Plaintiff submits that Chief Judge Gibbons' analysis is persuasive, because it points out the significant differences between the essentially civilian character of Plaintiff's relationship with his superiors and the purely military concerns motivating the Supreme Court to reach its decision in *Chappell.* It is Plaintiff's view that such differences suggest that the Seventh Circuit would not automatically apply *Ogden* to the factual context of this case, as Defendants contend.

In their reply, Defendants note that in the *Jorden* case, which involved a National Guard civilian technician—the same status as Plaintiff Spence—the majority ruled that "damages actions by military personnel against superior officers for constitutional violations" are barred. *Id.* at 108. The *Jorden* majority also stated that in *Chappell,* the Supreme Court laid down a general rule barring such claims without authorizing a "fact specific inquiry." *Id.*

Defendants argue, furthermore, that Chief Judge Gibbons' dissent is not persuasive with respect to his description of the "civilian" state oriented character of

the National Guard. By law and by constitution, the Air National Guard is part of the organized militia. That is, it is a military force subject to state and federal control which is available to be called into federal service under certain circumstances as part of the "total force" of the military.

In particular, Defendants note that the United States Constitution grants to Congress the authority

> to provide for organizing, arming, and disciplining, the militia, and for governing such part of them as may be employed in the service of the United States, reserving to the states respectively the appointment of the officers, and the authority of training, the militia according to the discipline prescribed by Congress.

U.S. Const. art. 1, § 8, cl. 16. Also, the Air National Guard is defined by statute as part of the organized militia of the state; is an Air Force and has officers appointed under Article 1, Section 8 of the Constitution; is organized at the expense of the federal government; and is federally recognized. 10 U.S.C. § 101(12).

Contrary to Chief Judge Gibbons' assertions in his dissenting opinion in *Jorden,* Defendants note that units of the Air National Guard have a dual mission: (1) the state mission of providing units organized, equipped, and trained to function efficiently at existing strengths and the protection of life and property and the preservation of peace, order and public safety, under competent orders of state authorities, which, in most cases, means the governor of the state; and (2) a federal mission of providing operationally ready combat units, combat support units, and qualified personnel for active duty in the Air Force to support augmentation requirements, to fulfill Air Force war and contingency commitments, and to perform such peacetime missions as are compatible with the training requirements and the maintenance of mobilization readiness. In addition, when directed to do so by the President of the United States, the Air National Guard units will protect life and property, and preserve the peace, order, and public safety as part of its feder-

al mission. Defendants further stress that members of the Air National Guard hold three simultaneous positions: membership in the Air National Guard of the state, federal recognition of that membership, and Air Force Reserve status as members of the Air National Guard of the United States. *See*, 32 U.S.C. § 307.

The Court finds that Defendants' Motion to Dismiss must be granted on this ground. Although the Seventh Circuit has not decided the issue of damage liability in a case such as this, Defendants have presented authorities from other circuits which indicate that damages are not allowable in this suit. In contrast, the only authority cited by Plaintiff in support of his argument that damages are available, is Chief Judge Gibbons' dissenting opinion in *Jorden*.

Although the Court finds Chief Judge Gibbons' arguments that the distinctions between the state national guards and the federal military warrant a distinction between the two in terms of the availability of a damages remedy to be fairly persuasive, the strong language used by the Supreme Court in *Chappell*, and the lack of authority for an award of damages in this case lead the Court to conclude that a damage award is unavailable to Plaintiff Spence. As noted by the *Jorden* majority, following the Supreme Court's statement in *Chappell* that it had not closed the door on all military claims for constitutional wrongs, 462 U.S. at 304, 103 S.Ct. at 2367–68, the *Chappell* court cited three cases to illustrate the kind of suits that remained viable: *Brown v. Glines*, 444 U.S. 348, 100 S.Ct. 594, 62 L.Ed.2d 540 (1980); *Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); *Frontiero v. Richardson*, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). As the *Jorden* court observed, none of those cases involved damages actions against military officers. *Jorden*, 799 F.2d at 107. This Court agrees with the *Jorden* majority that the implication of the citations by the *Chappell* Court is that, although some non-damage constitutional claims involving the military may remain viable, damage claims do not. Indeed, following its reference to these cases, the Supreme Court in *Chappell* declared, "We

hold that enlisted military personnel may not maintain a suit to recover damages from a superior officer for alleged constitutional violations." 462 U.S. at 305, 103 S.Ct. at 2368. For this reason, Defendants' Motion to Dismiss Plaintiff's claim for monetary damages against the individual Defendants is GRANTED.

## PLAINTIFF'S CLAIM FOR INJUNCTIVE RELIEF

■ In addition to monetary damages, Plaintiff seeks injunctive relief for reinstatement to his military position in the Illinois Air National Guard as a federal technician. In order to be a federal technician, Plaintiff must maintain his military status. 32 U.S.C. § 709(b); *Tennessee v. Dunlap*, 426 U.S. 312, 96 S.Ct. 2099, 48 L.Ed.2d 660 (1976). A National Guard technician must be separated from his civilian technician position if he loses military membership. 32 U.S.C. § 709(e)(1).

According to Defendants, the issue with respect to injunctive relief in this case is whether or not the Plaintiff has any right to re-enlist. It is Defendants' position that Plaintiff has no such right, and that his termination from the Illinois Air National Guard was proper. Defendants first state that it is well-established law that there is no right to enlist in the armed forces. *West v. Brown*, 558 F.2d 757, 760 (5th Cir.1977), *cert. denied*, 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 520 (1978). This principle also applies to reenlistments in the National Guard. *Holdiness v. Stroud*, 808 F.2d 417, 424 (5th Cir.1987); *Gant v. Binder*, 596 F.Supp. 757, 766–67 (D.Neb. 1984). Because no constitutionally protected "property interest" or "liberty interest" is triggered here, argue the Defendants, Plaintiff can have no expectation of re-enlistment, so that his request for injunctive relief must be denied. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed. 2d 548 (1972). Defendants note, moreover, that the denial of a re-enlistment carries no stigma which might act to foreclose future job opportunities to Plaintiff or impair his status in the community. Consequently,

Defendants contend that the Complaint does not state a claim under § 1983.

In addition, Defendants state that, for this Court to permit a suit for injunctive relief against military superiors in military personnel matters such as re-enlistment would directly conflict with decisions of courts of appeals from other circuits. In *Crawford v. Texas Army National Guard,* 794 F.2d 1034 (5th Cir.1986), the court refused to allow claims for injunctive relief for reinstatement in the Texas Army National Guard (TARNG). The reasoning of the *Crawford* court was as follows:

> Appellants finally contend before this court that they are entitled to injunctive relief in the nature of reinstatement to TARNG. No case following in the wake of *Chappell* has so held, although one court has enjoined the enforcement of a military off limits regulation that infringed on the claimants' First Amendment rights. See, *Ogden v. United States,* 758 F.2d 1168, 1184–85 (7th Cir.1985). In *Ogden,* however, the Seventh Circuit persuasively threw itself within the net of earlier Supreme Court decisions expressly approved in *Chappell,* none of which involved direct interference with military personnel decisions. *Id.* at 1175–76. *See, Chappell,* 462 U.S. at 304–05, 103 S.Ct. at 2367, 76 L.Ed. at 593.... The common characteristic of these decisions is that they involve challenges to the facial validity of military regulations and were not tied to discrete personnel matters. The nature of the lawsuits, rather than the relief sought, rendered them justiciable. The injunctive relief exception to *Chappell* advocated by appellants could swallow *Chappell*'s rule of deference.

794 F.2d at 1036. *See also, Martelon v. Temple,* 747 F.2d 1348, 1350–51 (10th Cir. 1984), *cert. denied,* 105 U.S. 2675, 105 S.Ct. 2675, 86 L.Ed.2d 694 (1985) (appellate court affirmed district court's granting of summary judgment for military defendants on claims which included a prayer for reinstatement). Thus, Defendants state that, in accordance with the reasoning of *Chappell* and later cases that recognize the deference which must be paid to military personnel decisions, Plaintiff Spence is not entitled to injunctive relief.

Plaintiff addresses this argument by stating that, because injunctive relief may be available for the denial of constitutional or statutory rights in the military context, Defendants have resorted to the argument that Plaintiff had no right to re-enlist in the National Guard, so that he had no reasonable expectation of re-enlistment. Plaintiff, however, urges that *Jorden* furnishes a persuasive basis for the availability of injunctive relief in this case. That court relied upon *Ogden*'s statement that, "Military personnel are not barred from 'all redress in civilian courts for constitutional wrongs suffered in the course of military service'," and its prior decision in *Dillard v. Brown,* 652 F.2d 316 (3rd Cir.1981), in holding that injunctive relief is available to military plaintiffs who establish that their constitutional or statutory rights have been violated. Plaintiff claims that such holdings are applicable in this case.

Plaintiff admits that, as a general proposition, military personnel do not possess a "right" to re-enlistment, but he argues that a decision to deny re-enlistment may not be predicated upon unconstitutional or other proscribed factors. In fact, Plaintiff notes that this point was emphasized in one of the three decisions that Defendants cite in support of their argument that there is no right to re-enlist in the National Guard. *See, Gant v. Binder,* 596 F.Supp. 757, 761 (D.Neb.1984), *aff'd,* 766 F.2d 358 (8th Cir. 1985). The *Gant* court relied upon the following passage from *Gilligan v. Morgan,* 413 U.S. 1, 11–12, 93 S.Ct. 2440, 2446, 37 L.Ed.2d 407 (1973):

> [I]t should be clear that we neither hold nor imply that the conduct of the National Guard is always beyond judicial review or that there may not be accountability in a judicial forum for violations of law or for specific unlawful conduct by military personnel....

Plaintiff states that the right that he seeks to protect in this lawsuit is his expectation that decisions concerning his re-enlistment would be premised upon legitimate, rather than illegitimate, grounds.

Plaintiff claims that there is an additional reason that he had an expectation of re-enlistment. Plaintiff, who is presently 56 years old, was 52 when his re-enlistment was denied. He had spent his adult working life as a civilian technician for the Pennsylvania National Guard. The Technician's Act of 1968 made him a federal employee, and the "congressional intention [of the Act was] to put the technicians in the same position as civil service employees to the extent reasonably possible." *DiLuigi v. Kafkalas*, 584 F.2d 22, 26 (3rd Cir.1978), *cert. denied*, 440 U.S. 959, 99 S.Ct. 1500, 59 L.Ed.2d 772 (1979). Pointing to these facts, Plaintiff argues that the legislative history of the Technician's Act indicates that Congress anticipated that technicians, albeit subject to the requirement that they retain their military enlistments in order to keep their civilian positions, would be permitted to keep their jobs until their normal retirement age of 60, assuming continued good service. Plaintiff notes that the Senate Report on the bill which later became the Technician's Act stated:

> Under the present regulations technicians holding enlisted grades are permitted to enlist in the Guard up to age 60. The committee has been informally advised that the National Guard intends to continue this policy, with the result that enlisted members should not be involuntarily retired through separation of job due to military promotion or elimination factors. In other words, so long as an enlisted technician properly performs his job, there should be no grounds for his involuntary retirement. Among the specific grounds that would not be any basis for involuntary retirement would be the voluntary resignation from the military status on the part of either a commissioned or enlisted technician, thereby causing disqualification for further civilian employment, failure on the part of the enlisted technician to re-enlist in the Guard, or failure on the part of any National Guard to accept his re-enlistment application if properly qualified, or the discharge from enlistment for failure to meet military standards.

Senate Report No. 1446, 90th Cong. 2d Sess. (1968).

Citing this legislative history, Plaintiff argues that he was entitled to expect that his re-enlistment would be granted unless he was rendered unfit due to valid military concerns as to his military or civilian conduct or capabilities. He claims that, to permit his separation due to a desire to discriminate on the basis of protected statutory and First Amendment activities is not one of the grounds upon which Congress anticipated that the National Guard could properly sever a civilian technician at the end of his military enlistment.

Defendants reply that, while a guardsman may be allowed to re-enlist if he "properly performs his job" and renders "continued good service," such is not the case here. According to the Defendants, the facts already submitted to this Court, as well as those contained in the ALJ's opinion, show that Plaintiff's military performance was poor. Consequently, Defendants urge that Plaintiff could have no reasonable expectation of re-enlistment.

In addition, Defendants urge that the facts of *Ogden* are distinguishable from the facts of this case, and that *Ogden* did not lay down a general rule in the Seventh Circuit that injunctive relief is available in a military context. The *Ogden* plaintiff challenged the facial validity of a military regulation which dealt with placement of an establishment "off limits" to military personnel. In contrast, the case at hand concerns a military personnel decision to deny re-enlistment. Defendants argue that, in light of the deference accorded to military personnel decisions, the reasoning of *Crawford v. Texas Army National Guard*, 794 F.2d 1034 (5th Cir.1986), should be adopted in the Seventh Circuit.

■ Defendants urge this Court to adopt the reasoning of the Fifth Circuit in *Crawford v. Texas Army National Guard*, 794 F.2d 1034 (5th Cir.1986); Plaintiff, the reasoning of the Third Circuit in *Jorden*. This Court finds the reasoning of the *Jorden* court to be more persuasive than that of the *Crawford* court. Although there is a clear conflict among the other circuits that

have addressed this issue, it is this Court's belief that injunctive relief should be permitted in a case such as this, in which the Plaintiff claims that he was denied re-enlistment based upon constitutionally impermissible factors.

In *Crawford,* the court observed that, although the *Ogden* court enjoined the enforcement of a military "off limits" regulation which infringed upon plaintiff's First Amendment rights, the Seventh Circuit in *Ogden* "persuasively threw itself within the net of earlier Supreme Court decisions expressly approved in *Chappell,* none of which involved direct interference with military personnel decisions. [*Ogden,* 758 F.2d] at 1175–76. See *Chappell,* 462 U.S. at 304–05, 103 S.Ct. at 2367, 76 L.Ed at 593." *Crawford,* 794 F.2d at 1036. According to the *Crawford* court, the common thread running through all of those decisions cited by the *Ogden* court was that they involved challenges to the facial validity of military regulations, but were not tied to discrete personnel matters. *Id.* In the view of the *Crawford* court, it was the nature of the lawsuits themselves, rather than the relief sought by the plaintiffs, that rendered them justiciable. *Id.* The *Crawford* court believed that an injunctive relief exception to the *Chappell* doctrine could swallow *Chappell's* rule of deference. *Id.*

In contrast, the Third Circuit in *Jorden* stressed the *Chappell* Court's statement that it was not closing the door on claims against the military for constitutional violations, and that the *Chappell* Court cited as examples of viable actions *Brown v. Glines,* 444 U.S. 348, 100 S.Ct. 594, 62 L.Ed.2d 540 (1980), *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), and *Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974), each of which involved claims for injunctive relief. The *Jorden* court acknowledged that those cases involved facial constitutional challenges to regulations or statutes concerning the military, but observed that the Supreme Court in *Brown* expressly stated that judicial scrutiny was not limited to facial constitutional challenges; rather, legitimate constitutional claims could arise

from the applications of those statutes and regulations. *Jorden,* 799 F.2d at 109, *citing,* 444 U.S. at 357 n. 15, 100 S.Ct. at 601 n. 15. The *Jorden* court also observed that *Goldman v. Weinberger,* 475 U.S. 503, 106 S.Ct. 1310, 89 L.Ed.2d 478 (1986) involved not a challenge to the facial validity of a military regulation but an attack upon its application.

The *Jorden* court also reasoned that *Chappell's* concern with respect to the need for military officers' uninhibited decision making, and the threat to such decision making that fear of personal liability would pose, is much less when plaintiff seeks injunctive relief. The *Jorden* court characterized the threat of personal liability for damages "a unique deterrent to vigorous decisionmaking." *Jorden,* 799 F.2d at 110. The *Jorden* court stated that the less intrusive nature of injunctive relief is the reason that government officials are often immune from suits for damages, but susceptible to claims for injunctive relief. *Id., citing Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980) ("prosecutors enjoy absolute immunity from damages liability ... but they are natural targets for § 1983 injunctive suits.")

The Court finds the reasoning of the *Jorden* court persuasive. While the court in *Crawford* believed that allowing injunctive relief would swallow up *Chappell's* tenor of deference, *Crawford,* 794 F.2d at 1036, the Court does not believe that the result obtained in *Crawford* gives adequate weight to the *Chappell* Court's reminder that military personnel are not immune from "all redress in civilian courts for constitutional wrongs suffered in the course of military service." *Chappell,* 462 U.S. at 304, 103 S.Ct. at 2368. Also, although the *Crawford* court characterized *Goldman v. Weinberger* as a case involving a facial attack on the military regulation, *Crawford,* 794 F.2d at 1036, *Goldman* in fact involved a challenge to the application of the regulation. In other words, *Goldman* was a case that did not involve a facial attack on a military regulation, yet the Supreme Court did not hold that injunctive

relief in the military context was foreclosed. Also, as a policy matter, this Court agrees with the *Jorden* court that injunctive relief is much less intrusive than relief in the form of damages in terms of restricting military decision making—the underlying concern of the *Chappell* court in denying intramilitary suits for damages. Therefore, although the answer is not crystal clear, this Court believes that Plaintiff's claim for injunctive relief should be allowed to stand, and that Defendants' Motion for Summary Judgment on this ground should be DENIED.

However, the Court's ruling is limited in scope to the issue of whether or not injunctive relief is available in suits such as this; the Court does not mean to say that, under the facts of this case, Plaintiff is or is not entitled to injunctive relief. Although Defendants claim that the facts presented to this Court clearly demonstrate that Plaintiff was not living up to the expected level of performance, Plaintiff claims to the contrary, and this difference constitutes a genuine issue of material fact which would render the issuance of summary judgment inappropriate at this time.

## JUSTICIABILITY OF THIS CASE

■ Defendants contend that this case is a non-justiciable military matter. They assert that denial of re-enlistment is a proper attribute of command, and claim that this Court should hesitate before intruding into the management and administration of the armed forces. *See, United States v. Shearer,* 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985); *Orloff v. Willoughby,* 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953). Defendants further state that, under similar circumstances, federal courts have dismissed cases in which plaintiffs sought review of military decisions. *See, Sebra v. Neville,* 801 F.2d 1135 (9th Cir. 1986); *Wilson v. Walker,* 777 F.2d 427 (8th Cir.1985); *Penagaricano v. Llenza,* 747 F.2d 55, 62 (1st Cir.1984). According to Defendants, the Seventh Circuit has indicated its approval of the test articulated in *Mindes v. Seaman,* 453 F.2d 197 (5th Cir. 1971), in evaluating the possibility of intrusion into military affairs. *See, Ogden,* 758

F.2d at 1179 n. 7. The *Mindes* court adopted a four-part test into the appropriateness of judicial review. In applying the *Mindes* test, the Court should evaluate the following:

1.  The nature and strength of plaintiff's challenge to the military determination;

2.  The potential injury to the plaintiff if review is refused;

3.  The type and degree of anticipated interference with military functions; and

4.  The extent to which exercise of military expertise or discretion is involved.

As to the first factor, Defendants argue that Plaintiff's claim against the military is weak. They state that he was a senior non-commissioned officer who slept on duty during a military exercise, did not adequately perform his supervisory duties, and violated regulations which govern wear of the military uniform. Thus, Defendants urge that Plaintiff's commanders had valid and compelling reasons to deny his re-enlistment in the military. According to the Defendants, even assuming that Plaintiff was denied re-enlistment on the account of his union activity, he has no constitutionally-protected interest in continued enlistment. Defendants claim that this is because commanders could refuse re-enlistment to a guardsman for any reason. In addition, if Plaintiff's case is not reviewed, he is not precluded from engaging in union activity, union employment, or other employment. The only detriment that Plaintiff would suffer would be cessation of his status as a member of the Illinois Air National Guard—a result to which no "chilling effect" or stigma attaches.

As to the second element, Defendants note that Plaintiff had over 29 years of military service and was retired with an honorable discharge. Thus, he was not separated before reaching his 20 year requirement for military retirement, or under other than honorable conditions. Defendants also observe that Plaintiff was entitled to a civil service retirement annuity at the time that he was separated from his technician employment, and that he has been collecting that annuity since June 6, 1982.

According to Defendants, there is little potential injury to the Plaintiff if review by this Court is refused. They state that he will be able to seek relief from the Air Force Board for Correction of Military Records (AFBCMR) under 10 U.S.C. § 1552 and from the Governor of the State of Illinois in his position as Commander in Chief of the State military forces under Ill.Rev.Stat., ch. 129, ¶ 220.11 (1985). It is Defendants' position that Plaintiff's congressionally-provided service remedy through the AFBCMR offers a meaningful opportunity for him to obtain whatever relief may be due to him so that refusal of judicial review would not leave the Plaintiff without remedy. Also, because Plaintiff has completed more than 20 years of service, upon reaching the age of 60, he will be entitled to retirement pay, medical benefits, commissary and exchange privileges.

As to the third element, Defendants argue that forcing military commanders to reinstate Plaintiff in the military unit would be highly disruptive and that a result of such intrusion by the Court would be a loss of respect for commanders by their subordinates. In addition, Defendants contend that review by this Court of military re-enlistment decisions would seriously interfere with internal military functions because, if courts were to routinely entertain re-enlistment complaints such as Plaintiff's, the military's ability to take timely personnel actions would be seriously impaired. Defendants state that military commanders must be allowed to determine which personnel are essential to the combat capabilities of the unit, and that personnel who do not contribute to, or who detract from, that combat capability should not be re-enlisted. Such decisions, argue the Defendants, require commanders to evaluate subjective, although proper, criteria. Defendants take the position that, if civilian courts are regularly open to challenges to re-enlistment decisions, commanders may rely solely upon the individual's objective record so that the decision could be easily explained in court. As a result, Defendants claim that judicial review would "undercut the ability of the military to make judgments based on criteria of military efficiency." *Penagaricano*, 747 F.2d at 63.

Finally, as to the fourth *Mindes* factor, Defendants claim that judges should normally defer to commanders about the composition of their units and personnel matters. Defendants state that decisions concerning re-enlistment of those military who have the capacity, judgment and attitudes to properly function in a military organization and to adequately defend the United States by performing their military mission, are clearly based upon extensive military expertise and command discretion. They also note that courts have traditionally deferred to the "superior knowledge and experience of professionals" in the administration of military personnel matters such as duty orders, promotions, demotions, and retention decisions. *Mindes*, 453 F.2d at 202. Defendants also note that the court in *Penagaricano* refused to review the plaintiff's political discrimination claim because "as a practical matter, there would be no way for the court to reach a judgment without exposing itself to all the pros and cons of the [retention] decision." *Penagaricano*, 747 F.2d at 63.

Defendants make the argument that, in this case, the Plaintiff's military commanders determined that his presence in their units created a disruption to morale, discipline, and mission capability, and that that decision should be left undisturbed. Indeed, Defendants argue that that decision should remain undisturbed even if it resulted from disagreement over protected union activity. Emphasizing the above analysis under *Mindes*, Defendants contend that Plaintiff's claims clearly constitute a non-justiciable military controversy.

In his response, Plaintiff states that Defendants do not accurately set forth the Seventh Circuit's position on the *Mindes* test. Plaintiff states that, in *Ogden*, the Seventh Circuit held that, even if *Mindes* were applied in that case, "the First Amendment rights raised by this appeal" compelled reviewability of the claim. 758 F.2d at 1179 n. 7. Plaintiff urges that the same principle applies in the case at bar. He states that his substantive rights to

engage in union activity concerning his working conditions without fear of reprisal are clear. He feels that it is axiomatic that the Constitution protects public employees from hostile state action arising from their First Amendment activities. *Hague v. CIO,* 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); *Labov v. Lalley,* 809 F.2d 220, 222–23 (3rd Cir.1987).

Plaintiff also contends that he was, as are all civilian technicians, entitled to the protections of the Federal Labor Management Act, enacted as Title VII of the CSRA, except to the extent inconsistent with 32 U.S.C. § 709. *Indiana National Guard v. FLRA,* 712 F.2d 1187, 1190 n. 3 (7th Cir.1983). He states that federal employees are entitled to freedom from employer retaliation when they file unfair labor practice charges or engage in other concerted activity. 5 U.S.C. § 7116(a)(1), (2), (4). He urges that, although § 709(e)(5) of the Technician's Act renders the Federal Labor Relations Authority unavailable as a forum to hear his claim, his substantive rights themselves remain protected by this Court's authority to enforce civil and statutory rights under § 1983.

Plaintiff states that the Technician's Act does not grant the National Guard officials unfettered discretion to "exploit" their dual status of a technician's military and civilian superior "to pervert the military decision making process." *Hunter v. Stetson,* 444 F.Supp. 238, 239 (E.D.N.Y.1977). In *Hunter,* a civilian technician claimed that he was militarily demoted in retaliation for his assisting another technician in filing a race discrimination complaint. In denying the government's motion to dismiss, the *Hunter* court stated:

> Plaintiff contends that the act which precipitated a reduction in his military rank (processing [the] complaint) was committed within the scope of his civilian employment, and that it is only by virtue of the fact that his superiors in the Guard wear two hats that they were able to mete out punishment in the form of a reduction in military rank. In other words, decision-making in the military sphere has allegedly been polluted by retaliatory motive with respect to the

civilian sphere. Had the retaliation taken place in the civilian sphere, civilian redress would of course have been available to plaintiff. Plaintiff further contends that the military disciplinary action has had an impact on his civilian employment, an apparently tenable claim in view of the dual status of plaintiff with respect to the Guard. It seems to me that ... the plaintiff [has] the right to demand that a line be drawn in these matters between the civilian and the military aspects of his employment, and I see no reason why a district court's injunctive powers are not adequate for these purposes. At least the issue should not be decided without a fuller record before the court.

*Id.* at 240. (Footnotes omitted). Plaintiff states that, because it is clear that retaliating against Guard members for their participation in lawful activities, rather than because they are militarily unfit for further duty, is not a reasonable exercise of the lawful discretion of military officials, so that this matter is justiciable.

Without abandoning their argument that this Court apply the four part test of *Mindes,* Defendants state in reply that, even assuming that Plaintiff's standard of review is correct, the record in this case shows no history of "retaliatory" motives or actions during the nearly 20 years of Plaintiff's union activity, but does show that Plaintiff was unfit for further military service in that the denial of his re-enlistment was a legitimate military decision. Therefore, under either test, Defendants argue that Plaintiff's claims are non-justiciable.

■ Although the Court finds the arguments of neither party as being particularly helpful on the justiciability question, the Court feels that Defendants' Motion for Summary Judgment must be denied on this ground. Even applying the factors articulated in *Mindes,* the Court believes that Plaintiff's claim is justiciable. Contrary to Defendants' assertion, the nature of Plaintiff's challenge to the military determination, that his First Amendment rights were

infringed by Defendants' conduct, is most certainly a powerful one. In addition, despite Defendants' contentions that Plaintiff will not lose benefits by virtue of the denial of his re-enlistment, the Court finds that the injury to him is great. Not only did Plaintiff lose the job which he had held for 29 years, but his exercise of First Amendment rights have truly been "chilled," if the Plaintiff's claims are founded in fact.

The Court also does not think that the type and degree of anticipated interference with military functions warrants this Court's abstaining from judicial review. The Court agrees with Defendants that decisions concerning re-enlistment of men who have the capacity, judgment, and attitudes to properly function in a military organization, are based on extensive military expertise and command discretion. However, the Court does not believe that that discretion is unfettered. While the Court appreciates the traditional deference that courts have paid to the knowledge and experience of military professionals in personnel matters, the Court believes that, to take Defendants' argument to its logical conclusion, *all* review of military decisions would be precluded. Consequently, as to the fourth *Mindes* factor, although there is heavy involvement of the exercise of military discretion in this case, the Court disagrees with Defendants that the decision that Defendants reached by exercising this discretion should remain undisturbed even if it resulted from disagreement over protected union activity. Such a finding, the Court thinks, would be tantamount to saying that, upon enlistment, National Guardsmen forfeit their constitutional rights—except to the extent that facially invalid military regulations may affect those rights.

This Court realizes that this result is contrary to that reached by the First Circuit in *Penagaricano*, but the Court feels that that court gave too much deference to the decisions of the military supervisors. The *Penagaricano* court, which applied the reasoning that Defendants advocate, emphasized judicial deference in the area of military decision making by giving greater weight to the latter two *Mindes* factors, the type and degree of anticipated interfer-

ence with the military function and the extent to which military expertise or discretion is involved, than to the first two, the nature and strength of plaintiff's claim and the potential harm to plaintiff, if review is refused. The Court thinks that such an allocation is erroneous. Certainly, the *Mindes* court did not require or even suggest such an application of its four-part test. The Court believes that there is good reason for this: To accord military personnel decision making the amount of deference shown by the *Penagaricano* court is to say, in effect, that those decisions are unreviewable. In this Court's estimation, that result is neither correct nor just. Therefore, Defendants' Motion for Summary Judgment on this basis is DENIED.

BARRING OF PLAINTIFF'S CLAIMS AGAINST THE UNITED STATES OR THE STATE OF ILLINOIS

■ Plaintiff seeks relief against Defendants in their official capacity. (Complaint, ¶¶ 2–6). Recently, the United States Supreme Court indicated that an action against an official in his official capacity is an action against the entity that he represents. *Brandon v. Holt*, 469 U.S. 464, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985). According to Defendants, the United States has not consented to suits such as those brought by Plaintiff. 28 U.S.C. § 2680(h). Defendants argue, furthermore, that the Eleventh Amendment shields the State of Illinois from damage determinations in this Court where the state is the real party in interest to pay official liability claims. *See, Oyler v. National Guard Association of the United States*, 743 F.2d 545, 554 n. 9 (7th Cir.1984). Also, "[j]udicial review of a claim for damages asserted on the basis of state law would constitute no less an unwarranted intrusion into the military personnel structure than entertainment of claims founded in ... § 1983 in *Bivens*. Absent express congressional provision for such judicial intervention, the rationale of *Chappell* and *Crawford* bars ... state law tort claims." *Holdiness v. Stroud*, 808 F.2d 417, 426 (5th Cir.1987), *citing Trerice v. Pedersen*, 769 F.2d 1398, 1403–04 (9th Cir.1985).

Because, as stated above, Plaintiff cannot, in any event, maintain an action for damages against these Defendants, many of the arguments raised by Defendants are moot. In addition, as stated by the court in *Holdiness*, these same principles operate to bar Plaintiff's state law claims for wrongful discharge insofar as he requests relief in the form of damages. Thus, as to any of Plaintiff's claims for damages against the Defendants in their official capacity, Defendants' Motion to Dismiss is GRANTED.

## CONCLUSION

To conclude, Defendants' Motion to Dismiss as to Plaintiff's claims for damages against Defendants in their official capacity is GRANTED. Defendants' Motion for Summary Judgment or to Dismiss as to Plaintiff's claims for injunctive relief and as to the justiciability of this case is DENIED. As stated by the Court at oral arguments on these motions, the Court reserves ruling on the issue of the applicability of Title VII of the Civil Service Reform Act to members of the National Guard. The Court will render its decision on this issue following receipt and review of supplemental memoranda from the parties.