Richard M. CRAWFORD,
Plaintiff-Appellant,

v.

TEXAS ARMY NATIONAL GUARD, et
al., Defendants-Appellees.

Bruce A. OLSON, Plaintiff-Appellant,

v.

TEXAS ARMY NATIONAL GUARD, et
al., Defendants-Appellees.

No. 85–1287.

United States Court of Appeals,
Fifth Circuit.

July 23, 1986.

Wilson, Grosenheider & Burns, Austin, Tex., for plaintiff-appellant.

Joseph W. Barbisch, Jr., Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for defendants-appellees.

Before GOLDBERG, HILL, and JONES, Circuit Judges.

**EDITH HOLLAN JONES, Circuit Judge:**

Less than two years before the Supreme Court's decision in *Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), appellants Crawford and Olson filed suit against the Texas Army National Guard (TARNG), the Governor of Texas, and twelve military personnel to rectify what they believe to be violations of their constitutional rights. They allege that they were dismissed or put in the inactive reserve in retaliation for reporting criminal activity and the discrimination and mistreatment of blacks in the TARNG. They further assert that the TARNG did not follow proper procedures in changing their status. Appellants' claims were pled under the first, fifth, and fourteenth amendments, and 42 U.S.C. §§ 1983 and 1985(2). They demanded judgment, including compensatory damages, punitive damages, reinstatement of their eligibility for all available retirement benefits, costs, attorney fees, and the removal of all false and adverse information from their personnel files, together with "such other and further relief ... at law or equity" to which they might be entitled. The appellants did not avail themselves of their right of appeal to the Army Board for the Correction of Military Records (ABCMR), which is responsibile for awarding back pay, retirement benefits, and other compensatory measures in the case of inequitable military personnel actions.

The district court granted TARNG's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), dismissing appellants' actions with prejudice. We affirm the dismissal, with the modification that it be without prejudice to the claims for which there may be ultimate reviewability of any future decision of the ABCMR.

■ *Chappell* held that military personnel may not pursue a *Bivens*-type action for damages against their superior officers to redress constitutional violations. 462 U.S. at 305, 103 S.Ct. at 2368, 76 L.Ed.2d at 594. *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The Court emphasized the long-standing supremacy of Congress over rights, duties, and responsibilities in the framework of the military establishment and the practical necessities of maintaining a strict discipline and command structure within the military services. These factors counseled against judicial intervention in internal military affairs.

Last term, in *United States v. Shearer*, —— U.S. ——, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985), reasserting the *Feres*[1] doctrine, which prevents claims under the Federal Tort Claims Act for injuries arising out of or in the course of activity incident to military service, the Court explained that:

> To permit this type of [negligence] suit would mean that commanding officers would have to stand prepared to convince a civilian court of the wisdom of a wide range of military and disciplinary decisions; for example, whether to overlook a particular incident or episode, whether to discharge a serviceman, and whether and how to place restraints on a soldier's off-base conduct.

*Id.* at ——, 105 S.Ct. at 3044, 87 L.Ed.2d at 45 (citing *Chappell* with approval). The principle expressed in these cases is that civilian courts may not sit in plenary review over intraservice military disputes. Following *Chappell* and *Shearer*, there can be little doubt that the permissible range of lawsuits by present or former servicemen against their superior officers is, at the very least, narrowly circumscribed.[2]

Several of the circuit courts, acknowledging the breadth of *Chappell*, have declared off limits § 1983 claims by National

---

1. *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

2. *Goldman v. Weinberger*, —— U.S. ——, 106 S.Ct. 1310, 89 L.Ed.2d 40 (1986), is not on point as to the justiciability of servicemens' potential claims, but, in holding that there is no constitutional right to wear a yarmulke while in the armed services, a majority of the Supreme Court again paid deference to the special needs of the military and the narrow scope of judicial review of military matters.

Guard personnel, *Brown v. United States,* 739 F.2d 362, 366–67 (8th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 3524, 87 L.Ed.2d 650 (1985); *Martelon v. Temple,* 747 F.2d 1348, 1350–51 (10th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2675, 86 L.Ed.2d 694 (1985); and a claim based on the alleged inadequacy of an intraservice remedy, *Mollnow v. Carlton,* 716 F.2d 627, 629–30 (9th Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 126 (1984). Only one circuit has held that *Chappell* did not directly preclude the justiciability of a serviceman's complaint that he was severed from the National Guard in violation of his rights to due process. *See Penagaricano v. Llenza,* 747 F.2d 55, 59 (1st Cir.1984). We note, in any event, that the *Penagaricano* court ultimately found the guardman's claims to constitute a nonjusticiable military controversy. *Id.* at 64. *See Mindes v. Seaman,* 453 F.2d 197, 201–02 (5th Cir.1971).

We agree with the reasoning behind the majority of the circuit cases, as we perceive no basis upon which to distinguish such claims from those held impermissible by *Chappell.* Section 1983 and due process claims, like those predicated on *Bivens,* invite judicial second-guessing of military actions and tend to overlap the remedial structure created within each service, which, according to *Chappell,* provide an exclusive remedy subject to review only under the arbitrary and capricious standard. 462 U.S. at 302–03, 103 S.Ct. at 2366–67, 76 L.Ed.2d at 592–93. Consequently, appellants' requests for money damages, to the extent they are based upon alleged constitutional violations and 42 U.S.C. § 1983, are precluded by *Chappell.*

We similarly reject the claims alleging a conspiracy violative of 42 U.S.C. § 1985(2). Inasmuch as the litigation of a claim under this statute would disserve the interests of proper military functioning to the same extent as a *Bivens* or an FTCA claim, the rationale of *Chappell* compels dismissal.

■ To the extent that appellants seek correction of their military records and reinstatement of eligibility for retirement benefits, their claim is premature. They have failed to exhaust available service-connected remedies by appealing to the Army Board for the Correction of Military Records. In this circuit, exhaustion is a prerequisite to judicial review of their grievances. *See Mindes,* 453 F.2d at 201. Their action on this basis should be dismissed pending the conclusion of such remedies.

■ Appellants finally contend before this court that they are entitled to injunctive relief in the nature of reinstatement to TARNG. No case following in the wake of *Chappell* has so held, although one court has enjoined the enforcement of a military off-limits regulation that infringed on the claimants' first amendment rights. *See Ogden v. United States,* 758 F.2d 1168, 1184–85 (7th Cir.1985). In *Ogden,* however, the Seventh Circuit persuasively threw itself within the net of earlier Supreme Court decisions expressly approved in *Chappell,* none of which involved direct interference with military personnel decisions. *Id.* at 1175–76. *See Chappell,* 462 U.S. at 304–05, 103 S.Ct. at 2367, 76 L.Ed.2d at 593. In *Brown v. Glines,* 444 U.S. 348, 100 S.Ct. 594, 62 L.Ed.2d 540 (1980), for example, the Court rejected the contention that an Air Force regulation requiring prior approval for soliciting signatures on a petition was unconstitutional. *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), found sex discrimination against servicewomen on the basis of benefits provided to spousal dependents. *Goldman v. Weinberger* refused to hold unconstitutional a regulation prohibiting the wearing of a yarmulke by an Orthodox Jewish soldier. The common characteristic of these decisions is that they involve challenges to the facial validity of military regulations and were not tied to discrete personnel matters. The nature of the lawsuits, rather than the relief sought, rendered them justiciable. The injunctive-relief exception to *Chappell* advocated by appellants could swallow *Chappell's* rule of deference. We therefore believe that suits for injunctive relief, like

those for monetary damages, must be carefully regulated in order to prevent intrusion of the courts into the military structure.

For the foregoing reasons, this court AFFIRMS the dismissal of appellants' complaints, but MODIFIES such dismissal to be without prejudice to the reviewability of any future actions taken by the Army Board for the Correction of Military Records.

AFFIRMED, as MODIFIED.