821 F.2d 1537
 44 Fair Empl.Prac.Cas. 594,
43 Empl. Prac. Dec. P 37,256
David STINSON, Plaintiff-Appellant,
v.
Major General William A. HORNSBY, individually and as the
Adjutant General of the Alabama National Guard, State of
Alabama; the Alabama National Guard; Major Ernest L.
Shipp, individually and as an officer of the Alabama
National Guard; Lt. Col. John Q. Adams, individually and as
an officer of the Alabama National Guard; George F. Hulsey,
individually and as an officer of the Alabama National
Guard, Defendants-Appellees.
 No. 86-7508.
 United States Court of Appeals,
Eleventh Circuit.
 July 20, 1987.
 
 Julian McPhillips, McPhillips, DeBardelaben & Hawthorne, Kenneth Shinbaum, Montgomery, Ala., for plaintiff-appellant.
 Don Siegelman, Atty. Gen., Richard N. Meadows, Asst. Atty. Gen., Montgomery, Ala., for defendants-appellees.
 Appeal from the United States District Court for the Middle District of Alabama.
 Before HILL and HATCHETT, Circuit Judges, and HENDERSON, Senior Circuit Judge.
 HATCHETT, Circuit Judge:
 
 
 1
 On October 1, 1982, the Alabama National Guard employed David Stinson, a black resident citizen of Montgomery County, Alabama, on a full time basis, as Training NCO/System Supervisor. It terminated him on September 29, 1985. Stinson alleged that the Alabama National Guard prohibited and refused to allow him the opportunity to gain a supervisory position, allowed white employees, with equal or fewer qualifications and experience, to gain supervisory positions, and allowed a less qualified white employee to act as supervisor over him. Stinson contends that his termination was due to racial discrimination.
 
 Facts
 
 2
 On September 5, 1985, Stinson filed a complaint alleging racial discrimination with the Department of the Army. On September 5, 1985, the complaint was received by Nelson V. Wood, Chief, The Army, National Guard Bureau, Washington, D.C. On November 5, 1985, Lt. Col. George Beck was directed to conduct a factual investigation of Stinson's complaint. On May 13, 1986, Maj. Gen. William A. Hornsby, Adjutant General, Alabama, submitted a final agency decision finding no discrimination.
 
 Proceedings in the District Court
 
 3
 On April 19, 1986, Stinson filed a complaint in the United States District Court for the Middle District of Alabama, alleging discrimination and seeking relief under 42 U.S.C. Secs. 1981, 1983, and 2000e-2000e-17. Stinson's complaint alleged that the Alabama National Guard engaged in racially discriminatory employment practices which had a disparate impact on him. Stinson contends that such discriminatory acts and practices violated his rights to due process and equal protection under the fourteenth amendment and his federal rights under Title VII, 42 U.S.C. Secs. 2000e-2000e-17.
 
 
 4
 On April 30, 1986, General Hornsby moved to dismiss Stinson's complaint, asserting that the district court was without jurisdiction under Title VII because Stinson had failed to exhaust administrative remedies; the military decision not to renew Stinson's tour of duty was non-reviewable; and the court was without subject matter jurisdiction to review Stinson's claim of racial discrimination against his military superiors.
 
 
 5
 In dismissing the complaint, the district court held that because Stinson was a fulltime uniformed employee on military duty with the Alabama National Guard, Stinson had no claim for relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. Secs. 2000e-2000e-17. The district court also held that based upon Chappell v. Wallace, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), Stinson had no claim for relief pursuant to 42 U.S.C. Secs. 1981 and 1983.
 
 Discussion
 
 6
 Stinson claims that the district court erred in finding that both causes of action alleged in his complaint failed to state a claim upon which relief could be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), and subsequently in dismissing the complaint.
 
 
 7
 On appeal, we accept as true the allegations in Stinson's complaint in order to determine whether Stinson sufficiently stated a cause of action under Title VII or sections 1981 and 1983. Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).
 
 A. Title VII Claim
 
 8
 In 1964, Congress enacted legislation that authorized members of the National Guard to perform additional training and duty beyond their regularly scheduled drills and periods of active duty. Title 32 U.S.C. Sec. 502(f); Pub.L. No. 88-621, Sec. 502(f), 78 Stat. 999, 1136 (1964).[1] Stinson was on full-time military duty with the Alabama National Guard pursuant to section 502(f) during the period of the misconduct alleged in this case.
 
 
 9
 In Taylor v. Jones, 653 F.2d 1193, 1200 (8th Cir.1981), the court, in declaring Title VII inapplicable to persons enlisted in the Armed Forces of the United States, including the National Guard, stated:
 
 
 10
 We have previously held that 'neither Title VII nor its standards are applicable to persons who enlist or apply for enlistment in any of the Armed Forces of the United States.' [Citation omitted.] We do not see any significant distinction, for Title VII purposes, between a member of the Army or Air Force and a member of the reserve component of those forces, the National Guard. In neither case is the relationship between the government and the member that of employer-employee; military service differs materially from civilian employment, whether public or private, and is not appropriately governed by Title VII. [Citation omitted.]
 
 
 11
 In Gonzalez v. Dept. of the Army, 718 F.2d 926 (9th Cir.1983), the court noted that the "military departments" consist of civilian employees, whereas the "armed forces" include uniformed military personnel, a distinction intended by Congress.
 
 
 12
 Stinson contends that because the Alabama Army National Guard is a state agency, it follows that an employer/employee relationship is created with the state. Stinson, however, was a uniformed member of, and on full-time military duty with, the Alabama National Guard. Title 10 U.S.C. Sec. 101 defines "armed forces" to include the Army, Navy, Air Force, Marine Corps, and Coast Guard. Under 10 U.S.C. Sec. 3062(c)(1), the Army consists of:
 
 
 13
 1. The Regular Army, the Army National Guard of the United States, the Army National Guard while in the service of the United States, and the Army Reserves.
 
 
 14
 Other factors support the district court's determination that Stinson, for purposes of Title VII, should be considered military personnel, rather than an employee of the state of Alabama: (1) Stinson wore a military uniform during periods of active duty and/or training; (2) he served on full-time military duty; (3) he was paid by the federal government and not by the state of Alabama; and (4) he was subject to military discipline on a daily basis. Thus, we conclude that Stinson, a member of the National Guard, is not an employee of the state of Alabama for purposes of Title VII. Compare Calhoun v. Doster, 324 F.Supp. 736 (M.D.Ala.1971) (district court found the distinction between defendant's state and federal positions blurred and artificial).[2]
 
 
 15
 We recognize that the finding that Stinson is more military personnel than state employee is a close one. Such a finding, however, does afford Stinson the same treatment and remedies as those with whom he worked full time.
 
 2. Sections 1981 and 1983 Claims
 
 16
 The Supreme Court in Chappell v. Wallace, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), held that enlisted military personnel are precluded from maintaining suits against superior officers to recover damages for injuries resulting from violations of constitutional rights in the course of military service. The Supreme Court in Chappell continued by noting that
 
 
 17
 'our citizens in uniform may not be stripped of basic rights simply because they have doffed their civilian clothes.' [Citation omitted.] This Court has never held, nor do we now hold, that military personnel are barred from all redress in civilian courts for constitutional wrongs suffered in the course of military service.
 
 
 18
 Chappell, 462 U.S. at 304, 103 S.Ct. at 2367. The court in Gonzalez, in noting the Supreme Court's decision in Chappell, stated that "[i]mplicit in the court's order of remand is the recognition that, in some situations at least, uniformed members of the armed services may assert that their constitutional and statutory rights have been violated by their superiors." Gonzalez, 718 F.2d at 929.
 
 
 19
 The Fifth Circuit in Mindes v. Seaman, 453 F.2d 197 (5th Cir.1971), employed a factoring analysis to determine whether a particular constitutional claim asserted by members of the armed forces against their superiors are barred from suit. The Mindes analysis requires an independent two-step evaluation. First, an internal military decision should not be reviewed unless the plaintiff asserts:
 
 
 20
 (a) an allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations, and (b) exhaustion of available intraservice corrective measures.
 
 
 21
 Mindes, 453 F.2d at 201. Second, the reviewability of the claim must be examined by weighing the following four factors:
 
 
 22
 1. The nature and strength of the plaintiff's challenge to the military determination. Constitutional claims, normally more important than those having only a statutory or regulatory base, are themselves unequal in the whole scale of values....
 
 
 23
 2. The potential injury to the plaintiff if review is refused.
 
 
 24
 3. The type and degree of anticipated interference with the military function. Interference per se is insufficient since there will always be some interference when review is granted....
 
 
 25
 4. The extent to which the exercise of military expertise or discretion is involved.
 
 
 26
 Mindes, 453 F.2d at 201.
 
 
 27
 We find the approach adopted in Mindes binding in this action. The record does not indicate that the district court employed the Mindes test to determine whether Stinson's sections 1981 and 1983 claims were barred because of the military personnel exemption. Therefore, we reverse and remand to the district court with instructions to employ the Mindes test in determining whether Stinson's sections 1981 and 1983 claims are barred. Noting that the Mindes test provides for an evaluation regarding exhaustion of available administrative remedies, we decline to address that issue now.
 
 
 28
 Our holding today is that members of the National Guard are generally employees of the state; but where the facts indicate that the person is on full-time military duty and other factors indicate that the person is more military than civilian, no Title VII action may be brought. As to other types of actions brought under statutes addressing discrimination, we hold only that the National Guard full-time member plaintiff must have the allegations of the complaint tested by the Mindes standard. Accordingly, we affirm in part, reverse in part, and remand.
 
 
 29
 AFFIRMED in part, REVERSED in part, and REMANDED.
 
 
 30
 HENDERSON, Senior Circuit Judge, specially concurring:
 
 
 31
 I write separately to suggest that remand of the plaintiff's constitutional claims based on 42 U.S.C. Secs. 1981 and 1983 for analysis under Mindes v. Seamen, 453 F.2d 197 (5th Cir.1971) may be unnecessary in light of the Supreme Court's rationale in Chappell v. Wallace, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). I concur in the decision of the panel, however, in deference to the precedential weight of Mindes. I take this opportunity to call attention to the recent interpretation of Chappell by the Fifth Circuit Court of Appeals, finding claims such as these nonjusticiable without resort to the cumbersome Mindes analysis, in the hope that this matter might be reexamined en banc and the utility of the Mindes test reconsidered in light of more recent Supreme Court decisions.
 
 
 32
 In Chappell, enlisted military men brought an action against their superior officers seeking damages, declaratory judgment, and injunctive relief for alleged racial discrimination in assignments and performance evaluations. The Supreme Court of the United States analyzed the direct constitutional challenges in terms of whether they stated a cause of action under Bivens v. Six Unknown Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Analogizing to the doctrine established in Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), which held that the United States is not liable, under the Federal Tort Claims Act, for injuries to military personnel which "arise out of or are in the course of activity incident to service," Id. at 146, 71 S.Ct. at 159, 95 L.Ed. at 161, the Court concluded that the unique disciplinary structure of the military establishment and Congress' activity in the field of military justice made it inappropriate to provide a Bivens -type remedy in this context. The Court stated:
 
 
 33
 [J]udges are not given the task of running the Army. The responsibility for setting up channels through which ... grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to interfere in judicial matters.
 
 
 34
 Chappell, 426 U.S. at 301, 103 S.Ct. at 2366, 76 L.Ed.2d at 591 [quoting Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953) ]. The Court further found that:
 
 
 35
 Congress has exercised its plenary constitutional authority over the military, has enacted statutes regulating military life, and has established a comprehensive internal system of justice to regulate military life, taking into account the special patterns that define the military structure. The resulting system provides for the review and remedy of complaints and grievances such as those presented by respondents.
 
 
 36
 Id. at 302, 103 S.Ct. at 2367, 76 L.Ed.2d at 592.
 
 
 37
 The Court echoed these concerns in United States v. Shearer, 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985), while defending the Feres doctrine, concluding:
 
 
 38
 To permit this type of suit would mean that commanding officers would have to stand prepared to convince a civilian court of the wisdom of a wide range of military and disciplinary decisions, for example, whether to overlook a particular incident or episode, whether to discharge a serviceman and whether and how to place restraints on a soldier's off-base conduct.
 
 
 39
 Id. at 58, 105 S.Ct. at 3044, 87 L.Ed.2d at 45.
 
 
 40
 The Fifth Circuit Court of Appeals, without relying on the two-part Mindes analysis, recently determined that Chappell and Shearer preclude judicial cognizance of constitutional claims brought by national guardsmen. In Crawford v. Texas Army National Guard, 794 F.2d 1034 (5th Cir.1986), two members of the Texas Army National Guard brought suit against the Guard, the governor of Texas and twelve military personnel alleging violations of their rights under the Constitution and 42 U.S.C. Secs. 1983 and 1985(2). The plaintiffs asserted that, in retaliation for reporting criminal activity and racial discrimination by the Guard, they were dismissed or removed from active duty. The Fifth Circuit Court of Appeals affirmed the district court's dismissal of the action pursuant to Fed.R.Civ.P. 12(b)(6), finding no significant difference between such claims and those held impermissible in Chappell. The Crawford court reasoned that the constitutional due process and section 1983 causes of action advanced by the plaintiffs required "judicial second-guessing of military actions" and interfered with the military system of justice established within each service to the same extent as the Bivens claims rejected in Chappell. The section 1985(2) allegations were dismissed under the same rationale. Id. at 1036. The appellate court declined to except the plaintiffs' prayers for injunctive relief from the reach of Chappell, finding that such an exception would "swallow" Chappell 's rule of deference. Therefore, the court held that suits for injunctive relief, like those for money damages, must be carefully regulated to prevent intrusion into the military structure. Id. at 1037.
 
 
 41
 Conspicuously absent in Crawford is any application of the Mindes test for adjudicating charges of civil rights violations.[1] Clearly, the court must have found that the Supreme Court's opinions in this area are controlling. The instant facts present the same kind of case found nonjusticiable in Crawford and Chappell. Stinson's claims for reinstatement, back pay and injunctive relief under 42 U.S.C. Secs. 1981 and 1983,[2] are challenges to military personnel decisions which would require a court to review his commanding officers' decisions concerning the promotion and dismissal of his men, determinations particularly dependent on the exercise of military discretion. Furthermore, Stinson had an opportunity to assert his grievances within the military system of justice, an opportunity which the defendants assert he has yet to exhaust. The military concerns found compelling in Chappell are equally present here. Therefore, Chappell can be read to support of the district court's dismissal of these claims on their face.
 
 
 42
 Although the Chappell decision expressly left open the right of military personnel to bring constitutional grievances to court, there can be little doubt that such access does not extend to "discrete personnel matters." Crawford, 794 F.2d at 1036. Boldly stating this conclusion, as the Fifth Circuit Court of Appeals has done, without requiring the district courts to address the Mindes test would bring this circuit closer in line with the Supreme Court on this issue and would perhaps be fairer to potential litigants. In my opinion, the Crawford decision is a better approach for determining the propriety of hearing military disputes in our courts.[3]
 
 
 43
 HILL, Circuit Judge, dissenting.
 
 
 44
 The opinion for the panel by Judge Hatchett and the special concurring opinion of Judge Henderson illuminate this issue and the interplay of precedent. I can add nothing of value to the discussion.
 
 
 45
 I conclude that Chappell v. Wallace, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed. 586 (1983) directs the district court's dismissal of this case and I would, therefore, AFFIRM.
 
 
 
 [1]
 The purpose of the enactment is to "provide protection for members of the National Guard who incur disability while they are (1) performing training or other authorized duty that is in addition to the regularly scheduled drills of their units, or the annual periods of 15 days of active duty for training...." S.Rep. No. 1584, 88th Cong., 2d Sess. 110 (1964), reprinted in 1964 U.S.Code Cong. & Admin.News 3800
 
 
 [2]
 The district court did not find that Calhoun's military position in the Alabama Air National Guard also established an employer/employee relationship with the state of Alabama as Stinson urges in this case. The district court ruled that "the defendant's military authority over the plaintiff is so inextricably intertwined with their civilian authority over him as to render any distinction between 'federal' and 'state' one of form, not substance." Calhoun, 324 F.Supp. at 740. Unlike Stinson, Calhoun held two separate and identifiable positions: one as a civilian employee and the other as military personnel
 
 
 [1]
 The Crawford court, in noting that several other circuits have found Sec. 1983 causes of action by national guardsmen nonjusticiable, specifically refers to the First Circuit's reliance on the Mindes test in addressing this question in Penagaricano v. Llenza, 747 F.2d 55, 59 (1st Cir.1984). Therefore, the Fifth Circuit knowingly rejected the Mindes analysis in the context of Secs. 1983 and 1985(2) claims for money damages. Nor is there any indication that the Crawford court applied Mindes to the guardsmen's request for injunctive relief
 
 
 [2]
 Although Stinson is an employee of the federal government for purposes of Title VII, his charges of due process violations under Sec. 1983 against the Alabama National Guard, the Adjutant General, and other officers of the Guard appear to satisfy the state action requirement of Sec. 1983 since the Guard is a hybrid state-federal venture. See generally, New Jersey Air Nat'l Guard v. Fed. Labor Rel. Auth., 677 F.2d 276, 278-79 (3d Cir.1982); Ala.Code Secs. 31-2-1 through 31-2-3 (1975)
 
 
 [3]
 A more recent decision of the Fifth Circuit Court of Appeals casts some doubt on that circuit's position with respect to the Mindes test. In Holdiness v. Stroud, 808 F.2d 417 (5th Cir.1987), the court affirmed the dismissal of the plaintiff's action brought pursuant to Sec. 1983 and Sec. 1985 for failure to state a claim upon which relief could be granted. The suit was brought by a former member of the National Guard who sought damages from his superior officers for violation of federal constitutional and statutory rights when he was barred from reenlisting and terminated from his employment as a civil technician. The district court dismissed the Sec. 1983 claims against four of the officers named in the complaint on the grounds that they were federal employees and thus, there was no state action. The plaintiff appealed. In addressing the plaintiff's Sec. 1983 claim, the court found the requisite state action but noted that the Crawford decision held that Sec. 1983 does not provide a cause of action for service connected disputes. The court, however, also referred to the First Circuit's opinion in Penagaricano, 747 F.2d 55, which applied the Mindes test in such instances. The Holdiness court then stated: "[w]e follow Crawford in applying the Chappell rule to Guard members, and using the tests in Chappell and Mindes, hold that the remedy sought by Holdiness would be so disruptive to military service that the claim should not be entertained by the federal courts." Holdiness, 808 F.2d at 423. The court did not remand the case to the district court for consideration of the Mindes factors, evidently finding that step unnecessary in light of Crawford and Chappell