Richard INTROINI, Plaintiff,

v.

**SOUTH CAROLINA NATIONAL GUARD,** SFC [Bobby] Horton, Col. [Robert] Brown, Maj. [Ricky] Haggard, Maj. [Matthew] Chandler, Maj. General T. Eston Marchant, in their individual and official [capacities], Defendants.

Civ. A. No. 8:93–1252–3.

United States District Court,
D. South Carolina,
Greenwood Division.

July 29, 1993.

William Gary White, III, Law Firm, Columbia, SC, for plaintiff.

Vance J. Bettis, Gignilliat, Savitz & Bettis, Columbia, SC, for defendants.

## ORDER

GEORGE ROSS ANDERSON, Jr., District Judge.

This is an action brought by Richard Introini ("Introini"), an enlisted member of the South Carolina National Guard on full-time status, against the South Carolina National Guard and five of his military superiors, including the Adjutant General of South Carolina, General Marchant. In his complaint, Introini alleges that he reported wrongdoing by his immediate military superior, Sergeant First Class (SFC) Horton, and that the defendants retaliated against him for these reports by accusing him of disloyalty and transferring him from his unit in Newberry to a less desirable unit. He purports to state a First Amendment whistleblower claim under 42 U.S.C. § 1983 and a statutory whistleblower claim under the South Carolina Whistleblower Act (S.C.Code Ann. § 8–27–10 *et seq.*) against the defendants. Introini seeks actual and punitive damages, attorneys' fees under 42 U.S.C. § 1988, and "such other and further relief as this court may deem just and equitable." [Complaint. p. 4].

The defendants filed a motion to dismiss under F.R.Civ.P. 12(b)(1) and (6) on June 17, 1993. The motion was fully briefed by the parties and the court heard oral argument on July 22, 1993. Upon consideration of the motion, the briefs of the parties, oral argument and pertinent authorities, the court concludes that the defendants' motion should be granted.

*The § 1983 Claim Against the South Carolina National Guard*

At the outset, the South Carolina National Guard asserts that it is immune from suit in federal court under the Eleventh Amendment and is not a "person" within the meaning of § 1983. Both of these contentions are correct. The South Carolina National Guard is, as Introini concedes, an agency of the State of South Carolina. *Accord, Henry v. Textron, Inc.,* 577 F.2d 1163, 1164 (4th Cir. 1978), *cert. denied,* 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 705; *Hefley v. Textron, Inc.,* 713 F.2d 1487, 1493–94 (10th Cir.1983). Accordingly, the Guard is immune from suit in federal court under the Eleventh Amendment unless the State has consented to be sued in federal court or unless Congress has overridden Eleventh Amendment immunity pursuant to its power to enforce the Fourteenth Amendment "by appropriate legislation." *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984).

Congress did not override the Eleventh Amendment immunity of the States when it enacted § 1983. *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Indeed, the Supreme Court has expressly held that the States and state agencies are not "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Therefore, it is unnecessary to consider whether the State of South Carolina has consented to be sued in federal court under § 1983. Under *Will,* a § 1983 claim against the Guard cannot be maintained in state or federal court. Accordingly, the § 1983 claim against the Guard fails as a matter of law under F.R.Civ.P. 12(b)(1) and (6).

*The § 1983 Claim Against the Individual Defendants*

The individual defendants contend that Introini's § 1983 claim for damages against them is foreclosed by the Supreme Court's decision in *Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). The court agrees.

In *Chappell,* several enlisted members of the Navy sought to sue their commanding officer for damages for alleged racial discrimination. The Supreme Court squarely and unequivocally rejected the claim and held that "enlisted military personnel may not maintain a suit for damages from a superior officer for alleged constitutional violations." 462 U.S. at 305, 103 S.Ct. at 2368. In explaining its unwillingness to permit suits by military members against their superiors, the Court wrote:

> The special nature of military life, the need for unhesitating and decisive action by military officers and equally disciplined responses by enlisted personnel, would be undermined by ... exposing officers to personal liability at the hands of those they are charged to command.

462 U.S. at 304, 103 S.Ct. at 2367.

The Fourth Circuit has interpreted *Chappell* as imposing an absolute bar to suits for damages by members of the military against their military superiors for alleged constitutional violations. *Mickens v. United States Army,* 760 F.2d 539 (4th Cir.1985). Although *Mickens* was himself an officer, not an enlisted member, the court of appeals held that the rationale of *Chappell* barred his suit for damages against his superiors.

 While both *Chappell* and *Mickens* involved claims brought by active duty military members, the courts have applied *Chappell* to bar claims for damages brought by members of the National Guard against their military superiors. Indeed, it appears that every court of appeals that has addressed this issue since *Chappell* was handed down has held that a member of the National Guard may not sue his military superiors for alleged constitutional violations under § 1983. *Jorden v. National Guard Bureau,* 799 F.2d 99, 108 (3rd Cir.1986), *cert. denied* 484 U.S. 815, 108 S.Ct. 66, 98 L.Ed.2d 30 (1987); *Crawford v. Texas Army National Guard,* 794 F.2d 1034 (5th Cir.1986); *Watson v. Arkansas National Guard,* 886 F.2d 1004 (8th Cir.1989); *Martelon v. Temple,* 747 F.2d 1348, 1350–51 (10th Cir.1984), *cert. denied,* 471 U.S. 1135, 105 S.Ct. 2675, 86 L.Ed.2d 694 (1985); *see also Banks v. Commander, Detachment 1 etc.,* 797 F.Supp. 984 (M.D.Ga.

1992). This court agrees that *Chappell* forecloses Introini's § 1983 claim against his military superiors.

It is noteworthy that the courts have not distinguished among various constitutional rights in applying *Chappell.* *Chappell* involved a claim of racial discrimination. *Mickens* involved a claim for deprivation of procedural due process. However, several of the cases involving § 1983 claims by National Guard members have dealt with First Amendment whistleblower claims like the one asserted by Introini. The result has been the same in all cases: *Chappell* bars the § 1983 claims.

For example, in *Crawford,* an enlisted member of the Texas National Guard sued twelve of his superiors under § 1983. Crawford, like Introini, alleged that his superiors had retaliated against him for reporting criminal wrongdoing by members of the Texas Army National Guard. The Fifth Circuit held that the claim was foreclosed by *Chappell:*

> *Chappell* held that military personnel may not pursue a *Bivens*-type action for damages against their superior officers to redress constitutional violations. The Court emphasized the long-standing supremacy of Congress over rights, duties and responsibilities in the framework of the military establishment and the practical necessities of maintaining a strict discipline and command structure within the military services. These factors counseled against judicial intervention in internal military affairs.

> . . . . .

> [W]e perceive no basis upon which to distinguish [§ 1983 claims asserted by National Guardsmen against their superiors in the Guard] from those held impermissible by *Chappell.* Section 1983 and due process claims, like those predicated on *Bivens,* invite judicial second-guessing of military actions and tend to overlap the remedial structure created within each service....

*Crawford,* 794 F.2d at 1035–36 (internal citations omitted).

In *Jorden*, a member of the Pennsylvania Air National Guard sued his superiors for damages under § 1983 alleging that he was discharged in retaliation for reporting improper expenditures of Guard funds. The Third Circuit held that *Chappell* together with *Butz v. Economu*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), foreclosed Jorden's claim. As the court of appeals observed, *Chappell* involved a *Bivens*[1] claim against a federal officer. *Butz* held that the immunity of federal officials from *Bivens* claims is identical to the immunity of state officials from § 1983 claims. The Third Circuit concluded that the combined holdings of *Chappell* and *Butz* compelled the conclusion that a member of the National Guard cannot maintain a § 1983 action for damages against his military superiors. 799 F.2d at 105–108. *See also Watson v. Arkansas National Guard*, 886 F.2d 1004, 1007 and id. n. 9 (8th Cir.1989).

Most recently, in *Lovell v. Heng*, 890 F.2d 63 (8th Cir.1989), the Eighth Circuit held a § 1983 First Amendment claim nonjusticiable under *Chappell*. Lovell testified before the Nebraska legislature in opposition to the confirmation of General Heng as Nebraska Adjutant General. General Heng was thereafter confirmed and, upon being confirmed, promptly ordered that Lovell be involuntarily terminated as State Retention Noncommissioned Officer for the Nebraska National Guard. Lovell sued, alleging that his involuntary termination was in retaliation for his testimony and therefore violated his First Amendment rights. Relying on *Chappell* and its own earlier decision in *Watson v. Arkansas National Guard*, 886 F.2d 1004, the court of appeals held Lovell's § 1983 claim for damages and injunctive relief (*i.e.*, reinstatement to his former position) nonjusticiable.

Despite the array of authority against him, Introini argues that his § 1983 action is supported by the Fifth Circuit's decision in

*Mindes v. Seaman*, 453 F.2d 197 (1971). The court disagrees. First, *Mindes* was decided twelve years prior to *Chappell*. Second, *Mindes* did not involve a claim for damages, but was a proceeding for judicial review of a final decision of the Secretary of the Air Force. Third, in a post-*Chappell* decision, the same court of appeals that decided *Mindes* squarely held that *Chappell* foreclosed both a § 1983 claim for damages and a claim for injunctive relief against the military superiors of the plaintiff Guardsman. *Crawford v. Texas Army National Guard*, 794 F.2d 1034 (5th Cir.1986). Finally, the *Mindes* court was at pains to emphasize that even the limited judicial review of a military decision there sought was inappropriate unless and until the plaintiff had exhausted available intra-service remedies, 453 F.2d at 201, and the Fourth Circuit has specifically held that such exhaustion is required. *Williams v. Wilson*, 762 F.2d 357 (4th Cir. 1985). Here, Introini has conceded that he did not pursue administrative remedies within the Guard before commencing this action. For all of these reasons, Introini's reliance on *Mindes* is misplaced.[2]

Introini also contends that the rule of deference embraced by *Chappell* loses its force in this case because South Carolina law authorized Introini to bring a whistleblower action under the State Whistleblower Act. Introini suggests that since his whistleblower and First Amendment claim are based on the same facts and will require that he plumb the same depths, the court should permit the § 1983 action to proceed since it will be no more disruptive to military discipline and the command structure than will his whistleblower action. This contention suffers from two fatal flaws.

■ First, for the reasons discussed subsequently, the court does not agree that Introini may prosecute a whistleblower claim under the South Carolina Whistleblower Act

---

1. *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

2. The other authorities that Introini relies on are equally unavailing. As defendants point out, all of the cases relied on save one predate *Chappell*. None involved a claim for damages against a military superior. The one post-*Chappell* case

cited by Introini—*Penagaricano v. Llenza*, 747 F.2d 55 (1st Cir.1984)—held that a former National Guardsman's "claim to reinstatement" under § 1983 was a "nonjusticiable military controversy" and affirmed the district court's dismissal of the claim under *Chappell*. 747 F.2d at 59.

either against the Guard or against his superiors. More importantly, § 1983 is a federal remedy and, as Introini's counsel conceded at oral argument, *federal,* not state, law determines whether an individual is amenable to suit under § 1983. *Jaworski v. Schmidt,* 684 F.2d 498 (7th Cir.1982), *cert. denied,* 460 U.S. 1015, 103 S.Ct. 1258, 75 L.Ed.2d 485 (1983); *see also Bellamy v. Borders,* 727 F.Supp. 247 (D.S.C.1989. Thus, Introini's contention that state law negates the policy underpinnings of *Chappell* is without merit both as a matter of fact and as a matter of law.

In accord with what appears to be the unanimous view of the courts that have considered the issue, this court holds that Introini cannot sue his military superiors for damages under § 1983 for alleged constitutional deprivations. *Chappell*'s logic and rationale plainly foreclose any such claim. Accordingly, this court holds that Introini's claim for damages under § 1983 against his military superiors (*i.e.,* the natural defendants) is nonjusticiable.

■ While Introini does not seek any specific injunctive relief, his prayer for relief does include the catchall phrase "and such other and further relief as this court may deem just and equitable". [Complaint, p. 4] To the extent this general request may be deemed a claim for injunctive relief, the court concludes that this claim, too, is nonjusticiable especially where, as here, intra-service remedies have not been exhausted. In reaching this same conclusion, the Fifth Circuit Court of Appeals reasoned that an "injunctive relief exception to Chappell ... could swallow Chappell's rule of deference." *Crawford v. Texas Army National Guard,* 794 F.2d at 1036. As noted by the *Crawford* court and others, an "intra-military action for injunctive relief raises the same concerns as an intra-military action for damages[.]" *Banks v. Commander of Detachment 1, etc.,* 797 F.Supp. 984, 986 (M.D.Ga.1992). *Accord, Crawford,* 794 F.2d at 1036–1037; *Watson v. Arkansas National Guard,* 886 F.2d 1004, 1008–1009 (8th Cir.1989).

*The Whistleblower Act Claim*

■ Turning to the pendent state whistleblower claim, the general rule is that a federal court lacks jurisdiction to entertain a state law claim against a State or state agency absent the State's express consent to be sued in federal court. *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Introini seems to suggest that the very existence of the South Carolina Whistleblower Act, with its considerable overlap with First Amendment whistleblower law, indicates that the State and its officials may be sued in federal court for violations of that Act, at least to the extent that the allegations supporting the state law claim would also state a First Amendment claim. The court disagrees but notes that, for reasons independent of Eleventh Amendment immunity, Introini's state whistleblower claim is not viable as a matter of law.

■ South Carolina's General Assembly has expressly preserved the State's immunity to suit in federal court to the full extent available under the Eleventh Amendment. The South Carolina Tort Claims Act (S.C.Code Ann. 15–78–10 *et seq.*) makes South Carolina state agencies subject to suit in *state* court under certain circumstances but specifically provides:

> Nothing in this chapter is [to be] construed as a waiver of the state's immunity from suit in federal court under the Eleventh Amendment to the Constitution of the United States....

§ 15–78–20(e), *id.* A State may waive its immunity from suit in its own courts without thereby waiving its immunity from suit in federal court under the Eleventh Amendment. *Pennhurst,* 465 U.S. at 99, 104 S.Ct. at 907; *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 241, 105 S.Ct. 3142, 3146, 87 L.Ed.2d 171 (1985). Although the Tort Claims Act does not apply to claims asserted under the South Carolina Whistleblower Act, *McGill v. University of South Carolina,* —— S.C. ——, 423 S.E.2d 109, 111 (1992), Introini has not pointed to any language in the Whistleblower Act or elsewhere in the statutory law of South Carolina which "specif[ies] the State's intention to subject itself to suit in *federal court*" on a whistleblower claim. *Atascadero State Hospital,* 473 U.S. at 241,

105 S.Ct. at 3146–47 (emphasis original). Therefore, the Eleventh Amendment bars the assertion of the Whistleblower Act claim against the South Carolina National Guard. *Id.; see also Bellamy v. Borders,* 727 F.Supp. 247, 250 (D.S.C.1989); *Gulledge v. Smart,* 691 F.Supp. 947, 955 n. 7 (D.S.C. 1988), *aff'd,* 878 F.2d 379 (4th Cir.1989).

Even apart from the bar of the Eleventh Amendment, Introini's pendent whistleblower claim fails as a matter of law. The Whistleblower Act provides a remedy to an "employee" of a "public body" who is retaliated against because he reports, exposes or testifies to wrongdoing, waste or corruption by the "public body" or by employees or officials of the "public body." A whistleblower claim lies only against a "public body", as defined in the Act, and is available only to an "employee" of that public body, as defined in the Act.

■ The Whistleblower Act defines the term "public body" to include "any department of the state" and "any ... state agency" S.C.Code Ann. § 8–27–10(1). This definition clearly embraces the South Carolina National Guard. The definition of "public body", though, does not include natural persons. Therefore, as the defendants point out, a Whistleblower Act claim may not be prosecuted against a supervisor or fellow employee, only against a public body. This fact dooms Introini's Whistleblower Act claim to the extent that claim is asserted against the natural defendants.

■ The term "employee" is defined in the Whistleblower Act in somewhat circular fashion: " 'Employee' means an employee of any of the following...." S.C.Code Ann. § 8–27–10(2). The defendants contend that the term "employee", as defined in the Whistleblower Act, does not extend to Introini because, in his capacity as a full-time enlisted military member of the South Carolina National Guard, Introini was a public officer, not an employee. The court agrees.

South Carolina law has always distinguished between public "officers" and public "employees." The distinction is an enduring one. *See, e.g., Sanders v. Belue,* 78 S.C. 171, 58 S.E. 762 (1907); *Willis v. Aiken County,*

203 S.C. 96, 26 S.E.2d 313 (1943); *State ex rel. Williamson v. Wannamaker,* 213 S.C. 1, 48 S.E.2d 601 (1948); *State v. Crenshaw,* 274 S.C. 475, 266 S.E.2d 61 (1980), *cert. denied,* 449 U.S. 883, 101 S.Ct. 236, 66 L.Ed.2d 108. Introini maintains that he was not an officer but was an enlisted member of the Guard; therefore, he contends, he was an "employee" within the meaning of the Act. This argument misperceives the distinction between public officers and public employees drawn by South Carolina case law.

It is indisputable that, as an enlisted member of the Guard, Introini was not an "officer" as that term is customarily used in military parlance. As Introini correctly notes, the South Carolina Military Code defines the term "officer" as used in *that* Code to mean "commissioned officers and warrant officers, unless otherwise specified." S.C.Code Ann. § 25–1–10(1). However, as an enlisted member of the National Guard, Introini was clearly a public officer within the meaning of the South Carolina case law cited above. As a member of the National Guard, he was required to take an oath of office, serve for a specified term (subject to reenlistment) and exercise part of the sovereign power of the State of South Carolina. These are all characteristics of an officer, not an employee. *See Crenshaw,* 266 S.E.2d at 62–63; *Willis v. Aiken County,* 26 S.E.2d at 315–316.

In sum, the General Assembly defined the term "employee" in the Whistleblower Act as "an employee ...", *not* "an employee or officer ..." Given the enduring distinction in the law between public officers and public employees, this omission to include officers within the statutory definition cannot be regarded as inadvertent or mere oversight. *See Smalls v. Weed,* 293 S.C. 364, 360 S.E.2d 531, 534 (Ct.App.1987) (where statute uses word having well-established meaning in law, legislature is presumed to have used word in that sense); *United States v. Deluxe Cleaners & Laundry,* 511 F.2d 926, 929 (4th Cir. 1975) (court cannot assume that statute fails to state something other than what it plainly states only by inadvertence). Because the legislative definition is controlling, *Brown v. Martin,* 203 S.C. 84, 26 S.E.2d 317 (1943),

and because Introini was not an "employee" but an officer, Introini cannot maintain a Whistleblower Act claim against the South Carolina National Guard. Therefore, even if the Eleventh Amendment does not bar this pendent claim, the claim fails as a matter of law.

For the foregoing reasons, the defendants' motion to dismiss is hereby granted under both F.R.Civ.P. 12(b)(1) and 12(b)(6). This action is hereby dismissed.

AND IT IS SO ORDERED.