Newth v. Adjutant General's Dep't 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-516-CV





FREDERICK A. NEWTH,



 APPELLANT


vs.





ADJUTANT GENERAL'S DEPARTMENT OF TEXAS 


AND THE EXECUTIVE DEPARTMENT OF THE STATE OF TEXAS,



 APPELLEES



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT



NO. 93-04792, HONORABLE F. SCOTT MCCOWN, JUDGE PRESIDING



 




 This appeal requires us to decide whether an employee and member of the Texas
National Guard (1) may maintain an action against the Adjutant General's Department and the
Executive Department of the State of Texas pursuant to Tex. Gov't Code Ann. §§ 554.001-.009
(West 1994) (the "Whistleblower Act"). (2) The trial court dismissed this cause without prejudice
on a plea to the jurisdiction, leaving Newth free to pursue his administrative remedies through the
military. We will affirm.


BACKGROUND


 In 1992, Frederick A. Newth was a captain in the Texas Army National Guard,
serving as a specialist in the Directorate of Plans, Operations and Training. While on duty,
Newth observed activities he considered illegal and reported them to the Federal Bureau of
Investigation and to Army Intelligence. He told these agencies about documents that could be
used to prosecute Colonel Richard Brito, third in command of the Texas National Guard, and
others for perjury to a federal grand jury. Newth also reported facts he believed could link
Colonel Brito and others to illegal activities involving drug smuggling. Additionally, Newth
testified in response to an inquiry from the Texas Army National Guard Inspector General
regarding an investigation of a superior officer.

 In the fall of 1992, Newth was passed over for promotion although he was at the
top of the promotion list. In February 1993, Newth decided he would not advance as a full-time
member of the Texas Army National Guard. He voluntarily resigned from active duty status and
sought a part-time position that would have made him eligible for a promotion to the rank of
major. The Adjutant General and Chief of Staff had already signed the paperwork for this
promotion when Newth was informed the position he applied for had been eliminated, his
promotion denied, and his former position eliminated. In March 1993, when Newth sought an
assignment, he was assigned out of his area of expertise to the position of Transportation Officer
under the Directorate of Logistics.

 Newth sued the Adjutant General's Department and the Executive Department of
the State of Texas under the Whistleblower Act, complaining that the failure to promote and the
reassignment out of his area of expertise constituted retaliation and discrimination in response to
his whistleblowing activities. The trial court granted a plea to the jurisdiction, without prejudice,
allowing Newth to pursue his administrative remedies through the military, having concluded that: 
(1) the Texas National Guard is not a "state governmental body" under the Whistleblower Act; (3)
(2) the Texas Legislature did not intend the Whistleblower Act to authorize interference in the
federal-state military command structure; and (3) tort claims concerning military personnel matters
in a state national guard are nonjusticiable under federal law. In four points of error, Newth
contends the trial court erred in dismissing the cause.


DISCUSSION


 Today we follow the Supreme Court and the federal circuits and hold that claims
brought by military personnel under state statutes for injuries arising from or in the course of
activity incident to military service are nonjusticiable. While declining to hold that military
personnel are barred from all redress in civilian courts for wrongs suffered in the course of
military service, the Supreme Court has nevertheless mandated that "[c]ivilian courts must, at the
very least, hesitate long before entertaining a suit which asks the court to tamper with the
established relationship between enlisted military personnel and their superior officers." Chappell
v. Wallace, 462 U.S. 296, 300, 304 (1983). It is appropriate for civilian courts to defer to
military judgment for two reasons. First, the Supreme Court has determined that it is not proper
for a civilian court to second-guess military decisions. Stencel Aero Eng'g Corp. v. United States,
431 U.S. 666, 673 (1977). Second, interference by civilian courts in military matters may impair
essential military discipline. Chappell, 462 U.S. at 300.

 In Feres v. United States, the Supreme Court initiated the policy of deferring to
military judgment and held that a soldier may not recover under the Federal Tort Claims Act for
injuries that "arise out of or are in the course of activity incident to service." Feres v. United
States, 340 U.S. 135, 146 (1950). The Supreme Court later explained that the holding in Feres
was premised upon concern for the "peculiar and special relationship of the soldier to his
superiors, the effects of the maintenance of such suits on discipline, and the extreme results that
might obtain if suits under the Tort Claims Act were allowed for negligent orders given or
negligent acts committed in the course of military duty." United States v. Brown, 348 U.S. 110,
112 (1954).

 In Chappell, five enlisted men serving in the United States Navy sued their superior
officers alleging that, because they were minorities, their officers failed to assign them desirable
duties, threatened them, gave them low performance evaluations, and imposed penalties of unusual
severity. Chappell, 462 U.S. at 297. The Supreme Court expanded the Feres doctrine, holding
that "the unique disciplinary structure of the Military Establishment and Congress' activity in the
field constitute `special factors' which dictate that it would be inappropriate to provide enlisted
military personnel a Bivens-type remedy against their superior officers." Id. at 304. (4)

 Subsequently, some federal courts applied Chappell narrowly, restricting the
holding to its specific facts, while others broadly applied its reasoning. See Jorden v. National
Guard Bureau, 799 F.2d 99, 107 (3rd Cir. 1986), cert. denied, 484 U.S. 815 (1987) (providing
a survey of cases applying Chappell). In United States v. Stanley, the Court granted certiorari
specifically to resolve the controversy among the circuits over the proper application of Chappell
in Bivens actions. See United States v. Stanley, 483 U.S. 669, 676 (1987). In Stanley, the Court
pointed out that while some of Chappell's language focused explicitly on the officer/subordinate
relationship presented in Feres, the Chappell approach should apply to all activities performed
"incident to service," not merely to activities performed within the officer/subordinate
relationship. Id. at 680-81; see Wright v. Park, 5 F.3d 586 (1st Cir. 1993).

 Before Stanley, the Third, Fifth, Eighth, and Tenth Circuits anticipated the
Supreme Court's broad application of Chappell and held that claims against military personnel
brought under 42 U.S.C. section 1983 for alleged violations of subordinates' civil rights are
nonjusticiable. See Holdiness v. Stroud, 808 F.2d 417, 423 (5th Cir. 1987); Jorden, 799 F.2d
at 108; Crawford v. Texas Army Nat'l Guard, 794 F.2d 1034, 1036 (5th Cir. 1986); Brown v.
United States, 739 F.2d 362, 366-67 (8th Cir. 1984), cert. denied, 473 U.S. 904 (1985); 
Martelon v. Temple, 747 F.2d 1348, 1350-51 (10th Cir. 1984), cert. denied, 471 U.S. 1135
(1985). Similarly, federal circuits applied Chappell and held that 42 U.S.C. section 1985
conspiracy claims and 42 U.S.C. section 1981 civil rights claims arising in the military context
are nonjusticiable. See Holdiness, 808 F.2d at 424-25; Brown, 739 F.2d at 369. 

 Only the First Circuit chose to limit Chappell to the context of enlisted personnel
suing superior officers. See Penagaricano v. Llenza, 747 F.2d 55 (1st Cir. 1984). The Fifth
Circuit expressly refused to follow the First Circuit. Crawford, 794 F.2d at 1036. In Wright,
the First Circuit overruled Penagaricano in light of the Stanley decision and joined the other
federal circuits in broadly applying Chappell's reasoning. Wright, 5 F.3d at 590-91. Wright, a
colonel in the Maine Army National Guard, sued a general and others under 42 U.S.C. sections
1983 and 1985; the federal whistleblower statute, 5 U.S.C. sections 2301-2302; and the state
whistleblower statute, alleging he was retaliated against because of his whistleblowing activities. (5) 
Id. at 587. The First Circuit held that the Stanley exception to Bivens liability is co-extensive with
the exception to tort liability in Feres, and that claims brought under the federal whistleblower act
and 42 U.S.C. sections 1983 and 1985 fall within the same category. 

 Although this Court is not bound by the decisions of the federal courts of appeals,
they are received with respectful consideration. See Barstow v. State, 742 S.W.2d 495, 501 n.2
(Tex. App.--Austin 1987, writ denied). We pay particular attention to the Fifth Circuit. After
Chappell, but before Stanley, the Fifth Circuit twice entertained suits military personnel had filed
against their superior officers. In Crawford v. Texas Army National Guard, the plaintiffs alleged
their constitutional rights had been violated when they were dismissed or put in the inactive
reserve in retaliation for reporting criminal activity and discrimination against and mistreatment
of minorities in the Texas Army National Guard. Crawford, 794 F.2d at 1035. The plaintiffs
asserted claims under the First, Fifth, and Fourteenth Amendments to the United States
Constitution, and under 42 U.S.C. sections 1983 and 1985(2). Id. The court dismissed the
claims, reasoning that due process claims and claims brought under sections 1983 and 1985(2)
"invite judicial second-guessing of military actions and tend to overlap the remedial structure
created within each service, which, according to Chappell, provide an exclusive remedy subject
to review only under the arbitrary and capricious standard." Id. at 1036.

 In Holdiness, an enlisted member and civilian technician in the Louisiana Army
National Guard alleged he was prevented from re-enlisting as a military member of the Louisiana
Army National Guard in retaliation for having appealed a low performance rating. This resulted
in termination of his employment as a civilian technician. Holdiness, 808 F.2d at 419. The
plaintiff brought a Bivens action and claims under the Federal Tort Claims Act, 42 U.S.C.
sections 1983 and 1985, and state law. The court affirmed the district court's dismissal of the
section 1985 claim for insufficient pleading of operative facts, and affirmed the district court's
dismissal of the Federal Tort Claims Act claim because the only proper defendant in a suit under
this act, the United States, was not named as a party. Id. at 425. With regard to the section 1983
claim, the court stated, "[W]e follow Crawford in applying the Chappell rule to Guard members
and, using the tests in Chappell and Mindes, hold that the remedy sought by Holdiness would be
so disruptive to military service that the claim should not be entertained by the federal courts."
Id. at 423. (6) The court also held that the Bivens claims were properly dismissed because they
presented a situation in which "military decision-making `would be undermined by a judicially
created remedy exposing officers to personal liability at the hands of those they are charged to
command.'" Holdiness, 808 F.2d at 426 (quoting Chappell, 462 U.S. at 304). Finally, the Fifth
Circuit affirmed the dismissal of the state-law claims, holding that "[j]udicial review of a claim
for damages asserted on the basis of state law would constitute no less an unwarranted intrusion
into the military personnel structure than the entertainment of claims founded in § 1985, § 1983,
and Bivens." Id. Newth attempts to characterize this final holding as dictum because the state-law
claims were pendent to the dismissed federal claims. Dictum or not, we are persuaded that state-law claims would undermine military decision-making as surely as the federal claims held to be
nonjusticiable.

 In his third point of error, Newth contends the trial court erred in holding that
claims concerning military personnel matters in a state national guard are nonjusticiable. Newth
attempts to distinguish his case from Crawford by arguing that he is an officer, not an enlisted
member of the Texas Army National Guard, and that the concern of maintaining discipline is less
important when the plaintiff is an officer. However, Newth fails to address the Stanley extension
of the Feres and Chappell doctrines to claims that arise out of or are in the course of activity
incident to service. See Stanley, 483 U.S. at 684. The concern for maintaining military discipline
and the chain of command does not hinge on whether the disciplinary and decision-making
structure of the military is challenged by an officer or by an enlisted member. We conclude that
judicial review of a claim for damages based on the Texas Whistleblower Act would constitute
no less an unwarranted intrusion into the military personnel structure than the entertainment of
Bivens actions or claims brought under the Federal Tort Claims Act, 42 U.S.C. sections 1983 and
1985, or the federal whistleblower statute. The third point of error is overruled.



CONCLUSION


 We hold that claims under the Texas Whistleblower Act concerning military
personnel matters in a state national guard are nonjusticiable, and that the trial court properly
dismissed the cause. Having so concluded, we need not address the remaining points of error. 
We affirm the judgment of the trial court.



 Bea Ann Smith, Justice

Before Chief Justice Carroll, Justices Kidd and B. A. Smith

Affirmed

Filed: August 17, 1994

Publish
1. [1]  The term "Texas National Guard" refers to the Texas Army National Guard and the Texas
Air National Guard. Tex. Gov't Code Ann. § 431.001 (West 1990).
2. [2] All citations in this opinion are to the current Government Code rather than former Tex.
Rev. Civ. Stat. Ann. art. 6252-16a because the recent recodification did not substantively change
the law. Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 47, 1993 Tex. Gen. Laws 583, 986.
3. [3] The Texas National Guard is not a party to this lawsuit. Neither is the Adjutant General's
Department under the control of the Texas National Guard. See Tex. Gov't Code Ann.
§§ 431.001, .022 (West 1990). However, because dismissal was proper for other grounds set
forth in the plea to the jurisdiction, we do not address this error in the order dismissing the cause.
4. [4] Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388
(1971), authorized a suit for damages against federal officials whose actions violated an
individual's constitutional rights, even though Congress had not expressly authorized such suits. 
However, such a remedy is not available when "special factors counselling hesitation" are present. 
See Bush v. Lucas, 462 U.S. 367, 378 (1983); Carlson v. Green, 446 U.S. 14, 18 (1980).
5. [5] In Wright, the First Circuit did not address the justiciability of the state whistleblower claim. 
The parties agreed that issue was moot after the Maine Supreme Judicial Court held the Maine
Legislature did not intend for the state whistleblower law to apply to military controversies. 
Wright, 5 F.3d at 587 n.3; see Maine Human Rights Comm'n v. Maine Dep't of Defense &
Veterans' Servs., 627 A.2d 1005 (Me. 1993).
6. [6] See Mindes v. Seaman, 453 F.2d 197 (5th Cir. 1971). This pre-Chappell case set forth
several factors to consider when deciding whether a federal court should review a decision by the
"military establishment." The factors include: (1) the nature and strength of the plaintiff's
challenge; (2) the potential injury to the plaintiff; (3) the type and degree of anticipated
interference with the military function; and (4) the extent to which the exercise of military
expertise or discretion is involved. Id. at 201. However, we decline to apply the Mindes factors
in light of the Supreme Court's decision in Stanley to dismiss Bivens-type claims that arise out of
or are in the course of activity incident to service, and the First Circuit's abandonment of the
Mindes approach in favor of the Chappell/Stanley approach. See Stanley, 483 U.S. at 684;
Wright, 5 F.3d at 590-91.